**UNITED STATES**

**v.**

**H. WOOL & SONS, Inc. et al.**

**No. 261, Docket 23041.**

United States Court of Appeals
Second Circuit.

Argued June 15, 1954.

Decided July 27, 1954.

Watters & Donovan, New York City (Clarke S. Ryan and Sidney Schwartz, New York City, of counsel), for defendants-appellants, H. Wool & Sons, Inc. and Herbert Wool.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City (Richard Owen, Asst. U. S. Atty., New York City, of counsel), for appellee, United States.

Before SWAN, MEDINA and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

H. Wool & Sons, Inc., a wholesale seller of dairy products, and Herbert Wool, the Corporation's Secretary, who was one of its principal owners and active in the management of its affairs, have been found guilty by a jury of violating § 331(k) of Title 21 of the United States Code, 21 U.S.C.A. § 331(k),[1] which among other things, prohibits the doing of any act with respect to an article of food held for sale after shipment in

---

1. "§ *331. Prohibited acts*
    "The following acts and the causing thereof are hereby prohibited:

    \*      \*      \*      \*      \*

    "(k) The alteration \* \* \* or the doing of any other act with respect to,

a food \* \* \* if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being \* \* \* misbranded."

interstate commerce which results in misbranding, as defined in § 343(e) (2).[2] Section 333(a), 21 U.S.C.A. § 333(a), makes violation of § 331 a misdemeanor.[3]

The food involved was butter, alleged to have been received by Wool Inc. after it had been in interstate commerce. The act of the defendants asserted to have resulted in misbranding was the repacking of some of this butter on or about September 23, 1952 in cartons labeled in part

"One Pound
Net Weight
Lily
Brand
Creamery Butter"

whereas the Government claims the butter in such packages weighed less than a pound.

The conviction of the defendants was on the third Count of an information which in the first two Counts charged the defendants with deliveries on two different dates of underweight butter for introduction into interstate commerce, also in violation of the Statutes just referred to. The jury acquitted on the first two Counts.

At the trial the Government introduced evidence, which indeed was not disputed, that shortly before September 23, 1952, Wool Inc. had obtained a shipment of butter from Zenith-Godley Company, which in turn had received the butter in interstate commerce from an Iowa concern, and that a substantial amount of this butter was on the Wool premises when the alleged repacking occurred on September 23, 1952. Nor was it seriously disputed that 19 of the 20 supposedly one-pound cartons of repacked butter

examined that day on the Wool premises by the Government inspectors were underweight.

The only factual issues under the third Count of the information which were really open to dispute related to (1) whether the butter in the 19 shortweight cartons had been in interstate commerce, (2) whether the defendants had knowledge that such was the case, and (3) whether they knew that such cartons were underweight. As to the last point, the trial Judge thought—and we must say with every justification—that defendants' counsel had conceded in his summation that the cartons were underweight. However, since it may be argued, as it now apparently is, that the statements of defense counsel in this respect related to the charges under the first two Counts of the information, we shall assume that no such concession was intended as to the third Count.

The appellants' contentions as to the absence of evidence that the defendants had knowledge of the out of state origin of any of the butter on the Wool premises or of the fact that the repackaged butter was underweight may be quickly disposed of. Both the wording of § 331(k) and the cases show that it was not incumbent on the Government to prove that the defendants *knew* that the butter contained in the underweight cartons had been in interstate commerce. See United States v. Dotterweich, 1943, 320 U.S. 277, 280–281, 64 S.Ct. 134, 88 L.Ed. 48; United States v. Tannuzzo, 2 Cir., 1949, 174 F.2d 177, 180. As to this issue, the trial Court charged the jury that "the law provides that if it [the butter] is brought into the state and

2. "§ 343. *Misbranded food*
"A food shall be deemed misbranded—
* * * * *
"(a) If its labeling is false or misleading in any particular. * * * (e) If in package form unless it bears a label containing * * * (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count: *Provided*, That under clause (2) of this paragraph reasonable variations shall be permitted, and exemp-

tions as to small packages shall be established, by regulations prescribed by the Secretary."

3. "§ 333. *Penalties* * * *
"(a) Any person who violates any of the provisions of section 331 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine * * *."

it is misbranded here, that it is a violation." And further "that if this butter came from out of the state and was misbranded, that is a violation of the law and comes within the charge of the third count in this case." This was a correct statement of the law. Nor was it necessary to prove that the defendants *knew* that the 19 cartons, or any of them, were underweight. See United States v. Balint, 1922, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604; United States v. Dotterweich, supra.

■ The next question is whether, as the appellants contend, the evidence as to the shortweight butter having been in interstate commerce was insufficient to take the case to the jury. We think it was not. As we have already noted, there was no dispute that there was on the Wool premises at the time a substantial amount of Zenith-Godley butter, and that this butter had been in interstate commerce before reaching the premises of the defendant corporation. So, in essence, the question was whether the defendants' underweight butter was Zenith-Godley butter. As to this, we have the following testimony from Inspector Ledder given on his direct examination by Government counsel: "Q. Inspector Ledder, did you at any time during that day [September 23, 1952] have a conversation with Mr. Wool [the individual defendant] as to the source of the butter? A. I did. I asked Mr. Herbert Wool where the butter that was being printed at the time we were there came from, and he told me that he had purchased it from Zenith Godley Company, in New York, and had received it from Zenith Godley's truck the day before."

This testimony was not specifically denied by the defendant Wool when he took the stand, and when there is added to it the testimony of Ledder as to what he observed, and that of Inspector North, although perhaps less persuasive than that of Ledder, we are left with no doubt but that the evidence on this vital issue was ample both to require submission of the case to the jury and to sustain its verdict.

It is next contended that reversal is required, particularly as to the defendant Herbert Wool, because of the Government's cross-examination of two of the character witnesses offered by Herbert Wool. Three such witnesses were called, Sofoul, Spero, and Ludwig. Sofoul and Ludwig were asked by the prosecuting attorney whether they had heard that the defendants on seven different occasions between October 9, 1946 and September 16, 1952 had paid departmental fines to the New York City Department of Weights and Measures for being in possession of shortweight butter. In some of the questions the Corporation and the individual defendant were coupled together, e. g., "Q. Did you hear that in [sic] January 24, 1947, the defendant corporation and the person in charge, Herbert Wool, paid a fine to the City of New York for shortweight butter in the amount of $67?" In others the corporation alone was referred to, e. g., "Q. Or did you hear that in [sic] May 27, 1948, the defendant corporation paid a departmental fine to the City of New York for shortweight butter, for $500?" And in others, the defendant Herbert Wool alone was mentioned, e. g., "Q. Have you heard in the community that on October 9, 1946, Mr. Wool paid a fine to the New York City Department of Weights and Measures of $275 for being in possession of short-weight butter?" Sofoul testified that he had not heard of any such episodes. Ludwig testified that he had heard that the individual defendant had paid such fines on several occasions. No such questions were asked of Spero.

The primary attack on this cross-examination is that it implied, contrary to the facts, that the defendant Herbert Wool had paid such fines in his *individual* capacity, it being conceded that the *corporation* had paid fines of this character, and that the Trial Court should not have allowed the examination to proceed without first inquiring into the facts. The secondary attack is that this cross-examination was permitted with too much specificity.

As pointed out by Mr. Justice Jackson in Michelson v. United States, 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168, the procedure as to character evidence in criminal cases is in many respects an anomaly in the law of evidence, and courts should be on the alert to see that the practice is not abused. We may also add that it is incumbent on prosecuting attorneys to be scrupulous in not stepping out of bounds on this sort of cross-examination. However, in the circumstances of the present case, we are satisfied that the prosecutor's mistake in attributing, at least by implication, to Herbert Wool personally these departmental infractions, and the Court's failure to make a preliminary inquiry as to the facts, can by no stretch be deemed to rise to the level of prejudicial error. There is not the slightest indication that the prosecuting attorney was acting otherwise than in good faith in putting the questions he did. And at most his error was a technical one. The dividing line between Herbert Wool and the Corporation was at best a shadowy one. The Company was a family owned enterprise, Wool and his younger brother each owning 24½% of the stock, and their father, who was inactive, owning 51%. Wool's testimony makes it quite apparent that he was the dominating factor in the enterprise and that he was intimately concerned in its affairs. As to the departmental fines Wool testified: "Q. You testified that you as an individual never paid certain fines to the City; is that right? A. I don't remember paying them, sir. I may have paid them for the corporation, but not individually. "Q. Well, what is your memory on that, as far as the corporation is concerned. A. Well, I remember we paid a fine, a few fines, but that is for the corporation, not individually." When the character witness Ludwig was asked whether he had heard that Herbert Wool had paid any such fines, he said that he had, and counsel for the defendants did not even think it worthwhile on redirect examination to attempt to get the witness to differentiate between the Corporation and the individual defendant.

Moreover, at the request of defense counsel, the Trial Court instructed the jury to "disregard the testimony with reference to certain other fines paid by the company or the defendant personally, the individual defendant. You should not consider that as having any bearing upon the facts in this case." And again during the defense summation the Court instructed the jury: "That testimony was stricken out." We regard as of no substance the appellants' contention that the Court referred to "the testimony" rather than the prosecution's questioning as to such fines. Indeed that was the very language in which the defense request was framed. Moreover, the defense had requested merely that "this testimony" should be disregarded as to the individual defendant, but the Court struck it out for all purposes.

We find no prejudicial error in the Government's interrogation of the defense character witnesses.

Nor do we find error in the specificity with which the prosecution's questions as to the departmental fines were put. The questions asked of the witness Ludwig were in the conventional general form. Those put to the witness Sofoul, all of which elicited negative answers, were within the bounds held proper in Michelson, supra. Moreover, even under the so-called Illinois Rule, which Michelson declined to follow, the questions to Sofoul would not be improper since they related to infractions similar in nature to those for which the defendants were on trial. See Michelson, supra, footnote 4, 335 U.S. at pages 473–474, 69 S.Ct. 213.

The remaining points raised by the appellants which relate to their being suspect of having mixed oleomargarine with butter; to the use by some of the Government witnesses of their investigation notes as an aid in testifying; to the proffer of certain affidavits in connection with the testimony of two witnesses who

were called on transactions involved in the charges under the first and second Counts of the information, on which the defendants were acquitted; to the examination of Inspector North; and to the prosecution's summation, we deem all too trivial to warrant discussion. The defendants had a fair trial, and in our opinion the jury's verdict could hardly have been otherwise.

Affirmed.