**Harry L. CRANSTON, Appellant,**

v.

**BALTIMORE AND OHIO RAILROAD COMPANY.**

**No. 12561.**

United States Court of Appeals Third Circuit.

Argued June 6, 1958.

Decided Aug. 13, 1958.

Rehearing Denied Sept. 10, 1958.

Vincent M. Casey, Pittsburgh, Pa. (Charles C. Rettberg, Jr., Baltimore, Md., Margiotti & Casey, Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant sued in the district court for alleged wrongful discharge from his employment with the defendant-appellee railroad. There was a jury verdict in favor of the defendant. A motion for new trial on behalf of the plaintiff was made, argued and denied. Plaintiff appeals from the judgment entered against him.

■ The district court had jurisdiction over the plaintiff's claim. Newman v. Baltimore & Ohio R. Co., 3 Cir., 1951, 191 F.2d 560; Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089.

Appellant was first employed by the railroad in 1923. He had worked in various capacities, including sheet metal helper. On February 1, 1950 he was laid off for lack of work. On May 1, 1950, prior to resuming active employment, at the company's request, through C. E. Gainer, Division Master Mechanic, he (under protest he says) signed the following:

"I, the undersigned, Harry L. Cranston, Sheet Metal Worker Helper at Glenwood Roundhouse, do hereby agree that if I am permitted to return to work as sheet metal worker helper at Glenwood Roundhouse, I will abide by all the rules of the Baltimore & Ohio Railroad Company, and of my agreement, and will report for work on time, work steady every day that I am physically able to do so, and if I fail to carry out this agreement in any respect, I will immediately resign from the service of the Baltimore and Ohio Railroad Company."

The paper was witnessed by T. H. Emswiller, Committeeman from his own union, the Sheet Metal Workers.

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

Appellant reported for work May 2, 1950. He did not so report May 3rd or, according to the defense evidence, at any time thereafter until immediately following his receipt of a letter from Gainer, dated May 19, 1950, notifying him of being dropped from service under the provisions of Rule 19 of the agreement between the railroad and the unions. That rule reads: " * * * Employees absenting themselves for fifteen (15) days without notifying management shall be considered as out of service and dropped from rolls and seniority roster."

There is no indication in the record that appellant ever resigned nor is there any assertion by the railroad to that effect. Appellant testified that within the fifteen day period he did see and speak to his superior and union officials about returning to work. There is uncontradicted evidence that appellant saw one of the railroad's clerks on May 11, 1950 and filled out and received a company slip for unemployment compensation.

The court posed the primary issue to plaintiff's counsel, saying:

> " * * * *it is just a question of credibility of witnesses whether he reported.* Whether he said he did or didn't. I don't know whether Doherty will throw any light on this subject.
>
> "Mr. Schlesinger: I think he will." (Emphasis supplied.)

Mr. Schlesinger at pretrial, in objecting to an amendment of its answer suggested by the defense, stated that Cranston " * * * was discharged summarily under Rule 19 in accordance with their own pleading * * *."

Addressing the defense attorney the court said:

> " * * * the issue as to whether or not this man reported in the 15 days, the evidence in the case is this man was let go under Rule 19. That is the case we are trying, is that correct?
>
> "Mr. Casey. That is correct, that's right."

■ Appellant's first point charges that the defense attorney improperly cross-examined plaintiff and so deprived the latter of a fair trial.

This was gone into on the motion for a new trial. The district judge in disposing of it and the other questions now before us was entirely satisfied that the issues were factual; that they had gone to the jury without serious trial error and he said, "I think substantial justice has been done in the case."

Appellant presented himself as a long time, steady worker (aside from an injury and its effects) and as a married man. Both of those contentions were an affirmative part of his damage proof. He was sharply cross-examined as to his marital status and habits, particularly drinking, as affecting his work stability. The record reveals some fact basis for the questions. The court while expressly conscious of the mitigation of damages feature involved was even more concerned with keeping the cross-examination within proper bounds. He ruled promptly on objection. He refused to permit defense counsel to cross-examine excessively on these subjects or to permit cross-examination where the particular matter was collateral. He denied motions for a mistrial during this phase of the trial.

We think the district judge in those decisions was not only acting within his sound discretion but doubt that, given the background of the questions involved, he would have been justified in allowing a mistrial. The defense was cross-examining from strength. The court ruled out some of the material as collateral. The balance did bear on the damage feature. It was undoubtedly disturbing to the plaintiff's cause but it was the plaintiff's vulnerability which brought it into being and the court stopped it from being pressed unduly.

■ Appellant argues that the district court erred in refusing him permission to inspect his own work records and those of John Berie, a railroad foreman and of perhaps other defense witnesses,

marked as exhibits by the defense. Additional error is alleged in the action of the court allowing these to be put in evidence. The records were marked at pretrial and introduced into evidence as impeaching statements in the complaint and in testimony that plaintiff had worked on all occasions when he was physically able and had a good record in this respect. The Berie work data was important to contradict plaintiff's statement he reported for work to Berie on May 5, 1950, within the fifteen day grace period. The Berie time sheet showed Berie had not worked on May 5, 1950.

Under the district court Rule 5–II Pre-Trial Procedure (g), impeaching matter need not be disclosed prior to trial. No element of Rule 34 of the Civil Rules, 28 U.S.C.A., is concerned in the problem. There was no inspection of documents or records sought though elaborate interrogatories had been served for the plaintiff and answered by the defendant. We are here dealing solely with records designated for impeachment purposes and not used as part of an affirmative defense. The trial judge did not commit error in his rulings regarding them.

Appellee's attorney had stated at the pretrial conference that the defense expected to produce Warren Doherty, president of appellant's bargaining union. He was subpoenaed by the defense and was in attendance at the trial but was not called as a defense witness. Nor was he called in plaintiff's main case although he lived in the same Pittsburgh district as appellant, and was available to subpoena.

After the defense had rested Mr. Schlesinger for the plaintiff requested the judge to call Doherty as a court witness. This was refused. Mr. Schlesinger asked permission to use him as a plaintiff's witness. The court, stating the issue as above quoted, allowed Doherty to testify in rebuttal on whether Cranston had seen him during the fifteen day interval and if so what he had said. The witness stated Cranston had seen and talked with him within the fifteen days about not being permitted to go to work. Cranston said, according to Doherty: "That they wouldn't let him go to work. I referred him back to Mr. Emswiler, (sic) who was his local committeeman at that point on the railroad." That ended the matter at the time as far as Doherty was concerned except, as he testified, he probably said something to Emswiller.

This trial question was again for the court's discretion which was exercised without abuse. Whether Doherty testified in plaintiff's affirmative case had been a matter of choice for plaintiff and his attorney. Whatever their reason, he was not used. The court permitted him to be put on the stand in rebuttal and to testify on the all important question of whether Cranston in an effort to resume his job had been to see him within the fifteen days. Plaintiff might possibly have developed other helpful testimony if he had called Doherty as a witness in chief but the trial judge committed no abuse of discretion in ruling as he did. "Ordinarily, whether or not a case shall be reopened for the reception of additional testimony is in the discretion of the Trial Judge, which discretion will not be disturbed on appeal." S. H. Kress & Co. v. Aghnides, 4 Cir., 1957, 246 F.2d 718, 725.

Error is also asserted in the refusal of plaintiff's motions for direction of verdict and summary judgment. The single reason advanced in support of this is that "The defendant acknowledged that Cranston did report to their clerk, George H. Clark, at least once on May 11, 1950, *to fill out and receive a company slip for unemployment* compensation, during the *exact same 15 day period* when they contend he did not report to anyone." (Emphasis supplied.)

The full Rule 19 reads:

"In case an employe is unavoidably kept from work he will not be discriminated against. An employe detained from work on account of sickness or for any other good cause

shall notify his foreman as early as possible either by telephone, messenger, or United States mail. Employes absenting themselves for fifteen (15) days without notifying Management shall be considered as out of service and dropped from rolls and seniority roster."

Clark was a witness for the defense. He said that in May, 1950 he handled the unemployment compensation claims of all the men regardless of what railroad was the employer. He was the designated unemployment compensation agent of the Railroad Retirement Board. He was asked about Cranston and replied as follows:

"Q. Did Harry Cranston ever apply in May of 1950 for Railroad Retirement unemployment compensation? A. Yes, he did, yes sir.

"Q. Where was that done? A. With me, I made out the necessary forms.

"Q. Where did he come to do that? A. Right in my office there in the front, front office.

"Q. During that time, from in May of 1950, did you see Mr. Cranston for any other reason, except for unemployment? A. That's all. Just unemployment.

"Q. Did he ever come to you and ask you where Mr. Gainer was and say he wanted to see him, during that period? A. Not that I can recollect, no sir.

"Q. That is all."

With that testimony, indeed on the above stated reason in his behalf, there could be no directed verdict for the plaintiff. Clark, whose evidence the jury believed, said that Cranston came to see him to have unemployment compensation forms filled out but that is not compliance in anywise with the directive of Rule 19 that the employee's foreman be notified of the reason why the employee has been unavoidably kept from work.

This suit was carefully and fairly pretried and tried by Judge Willson. The judgment will be affirmed.