**UNITED STATES of America,
Appellee,**

**v.**

**Gennaro J. COPPOLA and John W. Connelly, Appellants.**

**Nos. 300-1, Dockets 33538-9.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1970.

Decided April 17, 1970.
Certiorari Denied June 29, 1970.
See 90 S.Ct. 2246.

See also, D.C., 280 F.Supp. 192.

Leslie Byelas, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty. for the District of Connecticut, on the brief), for appellee.

R. David Broiles, New Haven, Conn. (Howard Jacobs, New Haven, Conn., on the brief), for appellant Coppola.

Donald G. Walsh, New Haven, Conn. (James R. Greenfield, New Haven, Conn., on the brief), for appellant Connelly.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and JUDD*, District Judge.

LUMBARD, Chief Judge.

Gennaro J. Coppola and John W. Connelly were tried pursuant to two indictments. The first, #11932, consisted of three counts: (1) transporting stolen securities into Connecticut in violation of 18 U.S.C. § 2314; (2) receiving, concealing and pledging stolen securities in violation of 18 U.S.C. § 2315; and (3) conspiring to do the above in violation of 18 U.S.C. § 371. The second indict-

* Sitting by designation.

ment, #12085, charged the appellants with one count of conspiracy to transport the stolen securities out of the State of Connecticut. At the close of the evidence, before the case was submitted to the jury, the conspiracy count of the first indictment was dismissed on motion of the government. The jury convicted the appellants on the two substantive counts of the first indictment and the conspiracy count of the second indictment. Coppola was sentenced to ten years and fined $10,000 on each of the substantive counts and five years and fined $10,000 on the conspiracy count; Connelly was sentenced to five years and fined $5,000 on each substantive count and fined $5,000 on the conspiracy count, all sentences to run concurrently.

Appellants claim error by the trial judge in: (1) allowing the jury to infer transportation of the stolen securities from the fact of possession, and (2) permitting the jury to find that a conspiracy to transport the bonds out of Connecticut existed. We hold that the jury was properly instructed regarding the inference of transportation from the fact of possession. However, the evidence was insufficient for the jury to find that the appellants conspired to transport the securities out of Connecticut. We affirm the convictions under the first indictment, #11932, and reverse the conspiracy conviction under the second indictment, #12085.

The charges arose out of a series of events in February and March, 1967, centering around the efforts of Anthony Testo, named a co-conspirator but not a defendant, to save his failing drugstore business. Testo owned and operated four drugstores in the Bridgeport-Fairfield, Connecticut area and was deeply in debt. He had applied to the Small Business Administration for a loan but had received no response. Coppola, having loaned Testo $3,000 on February 1, was aware that Testo was in dire financial straits and offered to supply Testo with bonds that could be used as collateral for loans. Testo accepted the offer and on February 23, Coppola delivered a $5,000 Federal Intermediate Credit Banks Bond to Testo who took it to the Mechanics and Farmers Bank and pledged it for a loan of $3,500. He then gave Coppola $1,000 in cash for supplying the bond. Testo needed still more money and after several more meetings with Coppola, Coppola gave Testo additional bonds, consisting of a Dormitory Authority of New York bond, a Turnpike Authority of Kentucky bond, and two Commonwealth of Puerto Rico bonds.

Connelly was present on at least four occasions when Testo and Coppola met, often driving the car in which Coppola was riding. Coppola introduced Connelly to Testo as "my partner John."

The scheme came to an abrupt end when Testo attempted to pledge three matured Federal Intermediate bonds. The bank suggested he redeem the bonds at face value rather than pledge them as security for a loan of a lesser amount, but Testo refused and asked for all three bonds back. The bank returned two bonds but retained one as additional collateral for a previous loan. The matured bond which was retained was a $10,000 Consolidated Collateral Trust Debenture of the Twelve Federal Intermediate Credit Banks, issued under the authority of the Federal Farm Loan Act and redeemable at any Federal Intermediate Credit Bank, Federal Reserve Bank or Branch, or any agency as the Twelve Federal Intermediate Credit Banks may designate. Coppola, upon learning of the incident at the bank, told Testo that he should have retrieved all three of the bonds.

Its suspicions aroused, the bank checked the bonds and discovered that they had been stolen from the New York City investment house of Newburger, Loeb & Co. sometime between September and December, 1966. An official of the investment house testified that an audit on August 26, 1966, had disclosed no bonds missing, but audits on October 26, and December 21, 1966, did disclose some missing bonds. There was also testimony that one of the bonds in de-

fendants' possession had been received by Newburger, Loeb & Co., on December 5, 1966. When Testo returned to the bank on the afternoon of March 9 he was questioned by FBI Agent Clarence Smith, told the bonds were stolen, and allowed to return to his store. When Coppola called Testo that night and offered to supply additional bonds, Testo notified the FBI, and Coppola and Connelly were apprehended the next day when they arrived to meet Testo outside the bank.

The appellants argue that the jury should not have been allowed to infer that appellants transported the bonds from New York into Connecticut from the fact that they possessed the bonds. We do not agree. The jury may infer from possession in one state of property recently stolen in another state that the possessors were parties to the transportation of the property as principals or abettors. Indeed, possession of stolen goods has long been recognized to be some evidence that the possessor was the thief. I Wigmore, Evidence § 152 (3d ed. 1940). The bonds were stolen within the preceding period of three to five months, and in one case apparently within two months. Further, there was testimony that the appellants had received the bonds from friends in New York City. Testo testified that Coppola told him he was going to obtain the bonds from friends in New York City (Tr. 557, 628–9), and that appellants told him that the bonds came from friends "in the City" and friends "down the line" (Tr. 575, 631).

As we indicated in United States v. De Sisto, 329 F.2d 929 (2d Cir. 1964), the possession of recently stolen goods supports an inference not merely of guilty knowledge but of participation in the theft. De Sisto had been found with several cartons of stolen goods five days after the actual theft, and the court rejected his argument that the only inference that could be drawn from the possession of recently stolen goods is guilty knowledge and not participation in the theft. See McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330 (1913). In Boehm v. United States, 271 F. 454 (2d Cir. 1921) the jury was permitted to decide whether possession four and nine months after the theft was sufficient to constitute possession of "recently" stolen goods.

Appellants base their argument that the inference was impermissible largely on the language contained in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). However, we do not think that these cases support the appellants' argument. Here the inference to be drawn is a factual one rationally supported by common sense and every day experience. In Leary the court stressed that the inference had insufficient basis in fact as there was and could be no showing that marihuana was always imported into the United States. See United States v. Matalon, 425 F.2d 70 (2d Cir. 1970) for a discussion of the impact of Turner and Leary on the statutory presumption that possession of smuggled goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction. Although the test to be applied when judging the constitutionality of a statutory presumption has undergone extensive examination in Turner and Leary, we are dealing here with a long recognized rule of common law, I Wigmore, supra, and the cases dealing with statutory inferences are not controlling. In Matalon, supra, the statute in question, 18 U.S.C. § 545, allowed the jury to infer knowledge of illegal importation irrespective of the length of time elapsing between the date the goods illegally entered this country and the date the goods were found in the defendant's possession. The court indicated that a showing of "recent" illegal importation would be necessary to support the inference that one possessed of the goods was more likely than not to be aware that

the goods had been illegally imported. United States v. Matalon, p. 2210.

We come then to the question of whether the jury was properly instructed regarding the inference, and we find that it was. Judge Timbers charged:

"This inference of interstate transportation is what the law calls a permissible inference. From the fact of possession in one state of property recently stolen in another state you may infer that the possessor transported the property in interstate commerce; but—and this must be absolutely crystal clear to the jury—you are not required to draw such an inference. It is entirely up to you whether you do so or not.

Furthermore, in determining whether you will draw the inference here, you should consider, among other things, whether the possession of the stolen bonds in Connecticut, if you find 'possession' and if you find that the bonds were stolen, was sufficiently 'recent' to warrant your drawing the inference. The term 'recent' or 'recently' is a relative term which has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence. Obviously, the longer the period of time since the theft, the less justification there is for drawing the inference."

The trial judge properly stressed the fact that the possession must be of recently stolen goods, and in several places emphasized that the appellants did not have the burden of proving or explaining possession, saying at one point: "I hasten to add that no defendant has any burden of explaining his possession, if you find that defendants were possessed of the bonds." It was made abundantly clear to the jury that it was their decision whether or not to apply the inference and that they should only apply the inference if possession was sufficiently "recent" to justify its application.

The appellants' second point challenges the sufficiency of the evidence to prove the charge of conspiring to transport the stolen bonds out of Connecticut. We find that the evidence was not sufficient to support the charge of conspiracy. Accordingly, we reverse the convictions of both appellants on this count. A review of the evidence points up the inadequacies of the government's position.

The government proved that on March 8, 1967, Testo pledged four bonds with a face value of $20,000. The bonds, each for $5,000, were a Turnpike Authority of Kentucky bond due July 1, 2002, two Commonwealth of Puerto Rico bonds due July 1, 1970 and a Dormitory Authority of New York bond due July 1, 1994, all redeemable upon maturity at various locations outside of Connecticut. The government also introduced evidence showing that Testo was in dire financial straits and that Coppola was aware of the extent of Testo's difficulties. The government argues that from these facts the inference may be drawn that Coppola and Connelly were aware that at some future time the bonds might be expected to become a part of interstate commerce.

The government relies on United States v. Mattia, 379 F.2d 725 (3rd Cir. 1967) for support of its argument, but in that case, the defendants in New Jersey had themselves counterfeited General Motors Acceptance Corporation Bonds with a redemption provision in New York. In the present case, however, the inference is significantly more tenuous for one must infer not only that the defendants foresaw Testo would default on the bonds, but also that they foresaw the bonds would be redeemed outside of the State of Connecticut. The pledged bonds were due in 1970, 1994, and 2002, and rather than their being redeemed out of Connecticut at some far distant time, the greater likelihood is that the bank would sell the pledged bonds on default, an action which could easily have taken place in Connecticut. If the government's theory were to prevail, every

disposal of a stolen bond, with a redemption provision out of state, would also constitute a conspiracy to transport the bond out of the state. This result would strain the language of the statute and would, in effect, be giving duplicate punishments for what is in essence but a single crime.

We have considered the other points raised by appellants and find them without merit. The convictions on counts one and two of indictment #11932 are affirmed and the conviction on count one of indictment #12085 is reversed. As the sentences imposed were well within the limits applicable to the convictions under the first indictment, our reversal of the conviction for conspiracy does not require a remand for resentence of the defendants.