**UNITED STATES of America**

v.

**Chester ZOCHOWSKI, a/k/a Chester Gray, Defendant.**

**No. 71 Cr. 748.**

United States District Court,
S. D. New York.

Oct. 6, 1971.

---

Whitney North Seymour, Jr., U. S. Atty. for S.D. of N.Y., New York City, for United States of America; James T. B. Tripp, Asst. U. S. Atty., of counsel.

Segal & Hundley, New York City, for defendant; Marvin E. Segal, New York City, of counsel.

## OPINION and FINDINGS OF FACT

EDWARD WEINFELD, District Judge.

In this nonjury trial, the defendant is charged with causing the interstate transportation of stolen securities in violation of 18 U.S.C., sections 2314, 2. The evidence establishes that four $10,-000 United States Treasury Bills, the subject matter of the indictment, originally in the possession of Brown Brothers Harriman & Co., were missing from its vault. The matter came to light when the firm had not received the proceeds of certain Treasury securities due July 31, 1970. Soon thereafter an investigation was commenced; however, verification that the bills were missing was not completed until August 14 and 15,

when an inventory, participated in by more than 100 employees, was taken of all securities on hand in the firm's vault as against the firm's record of securities that should have been on hand. It was then determined that the four $10,000 bills, as well as others totalling hundreds of thousands of dollars, were missing, and it was concluded they had been stolen.[1] The four $10,000 bills in question were issued as follows: two on March 5, 1970, due and payable on September 3, 1970; one on May 7, 1970, due on November 5, 1970; and one on May 28, 1970, due on November 27, 1970.

The evidence abundantly establishes that these bills were stolen from Brown Brothers Harriman & Co. While no precise date of the theft can be fixed, it is clear that the bills were stolen some time between their receipt by the investment house and the date of discovery of the theft. One $10,000 bill was received on May 8 and placed in the vault on that date; two were placed in the vault on June 4, and the fourth $10,000 bill went into the vault on June 18. There was no activity with respect to those bills from their delivery into the firm's vault until the discovery that they were missing early in August. While there is testimony by a witness that the bills were missing about July 27, 1970, it does not necessarily follow that this is the precise date of their theft.

After it was discovered that the four $10,000 Treasury Bills were missing, they next appear in the possession of the defendant. According to the testimony of William M. Hisey, he received the bills from the defendant on August 20, 1970, and the next day transported them from New York to Belleville, Illinois. The defendant and Hisey, as a result of prior negotiations, met at a New York City hotel on August 20, 1970. The defendant had agreed to finance the purchase of a leasehold interest in oil properties, which it was estimated required $25–35,000, and the purpose of this meeting was for Hisey to receive the agreed upon funds from the defendant. Upon meeting, the defendant said he was waiting for a man to deliver money which was owed to him. Hisey and the defendant sat at a table in the hotel restaurant the better part of a day while the defendant made and received various calls from a plug-in phone at their table. The defendant's alleged debtor never appeared. However, in the late afternoon a man came to defendant's table and delivered to him a large manila envelope. Late in the evening the defendant said he had not received the cash he expected, but that he had Treasury Bills which Hisey could either cash or borrow against in order to raise the funds required for the lease transaction. The defendant said the bills were as negotiable as cash and it was agreed that Hisey would take them to his bank at Belleville, Illinois, and there set up an escrow account. The defendant then gave Hisey the four $10,000 Treasury Bills. The witness left New York City the next morning with the bills and travelled to Belleville, where he presented the Treasury Bills for a $35,000 loan and arranged the agreed upon escrow account. Within twenty minutes Hisey was advised that the bills had been stolen.

Upon the evidence, the government has established beyond a reasonable doubt that the bills were stolen; also, that the defendant knowingly and willfully caused their transportation in interstate commerce—that is, from New York City, New York, to Belleville, Illinois; further, it is beyond question that the four Treasury Bills had a value of at least $5,000.

The final element, and one seriously challenged by the defendant, which the government must also establish beyond a reasonable doubt is that the defendant knew that the bonds had been stolen when he handed them over to Hisey for transportation to Illinois to be cashed or used as collateral. The defendant cor-

---

1. *Cf.* United States v. Izzi, 427 F.2d 293, 296–97 (2d Cir.), *cert. denied*, 399 U.S. 928, 90 S. Ct. 2244, 26 L.Ed.2d 794 (1970).

rectly asserts there is no direct proof of knowledge. However, as has been stated so often, proof of knowledge, as of intent, rarely can be established by direct evidence.[2] Usually the government must rely upon circumstantial evidence —proof of independent facts from which an inference of the ultimate fact to be established may rationally be drawn in the light of common experience. Here, the government relies upon the defendant's possession of the stolen bonds when he handed them over to Hisey soon after they were discovered missing,[3] and urges such possession and all the circumstances attendant upon his delivery of the bonds to Hisey warrant the inference that he knew of their illicit character in the absence of a satisfactory explanation arising out of the evidence in the case.[4]

Upon a careful review of all the evidence, I am persuaded that the government has fully sustained its burden of proof with respect to the element of knowledge—that the defendant knew the bills were stolen. I am satisfied that this is so, even without proof of the sim-

ilar act or conduct which was received in evidence over the defendant's objection for the limited purpose permitted by law.[5]

With respect to the similar act, I have held the government to a higher standard of proof than the law requires, to wit, that the essential elements of the alleged similar act be proven beyond a reasonable doubt;[6] and so appraising the evidence and the demeanor of the witnesses, I find that the government has met that standard. Briefly, this transaction occurred ten days before the crime charged in the indictment; it also involved stolen Treasury Bills. The defendant, at an Illinois airport, gave one Kane, a former official of a bank in Eldorado, Illinois, who had embezzled bank funds, two $10,000 bills and seven $1,000 bills. These securities, recently stolen from a firm in New York, were to be used to pay a $16,500 note signed or authorized by the defendant, due and payable to the Eldorado bank, with the overrun of the redemption of the Treasury Bills to be credited to the defendant's account which he maintained at

2. *See, c. g.,* Berry v. United States, 283 F.2d 465, 466 (8th Cir. 1960) (per curiam), *cert. denied,* 364 U.S. 934, 81 S.Ct. 380, 5 L.Ed.2d 366 (1961) ; United States v. Werner, 160 F.2d 438, 441–42 (2d Cir. 1947) ; Estep v. United States, 140 F.2d 40, 45 (10th Cir. 1943).

3. *Cf.* United States v. Izzi, 427 F.2d 293 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 794 (1970) (possession of securities stolen five to six months previously) ; United States v. Coppola, 424 F.2d 991 (2d Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2246, 26 L.Ed.2d 795 (1970) (possession of bonds stolen two to five months previously) ; Boehm v. United States, 271 F. 454 (2d Cir. 1921) (possession of automobile tires stolen four and nine months previously).

4. *See* United States v. Izzi, 427 F.2d 293 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 794 (1970) ; United States v. Metalon, 425 F.2d 70 (2d Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76 (1970) ; United States v. Coppola, 424 F.2d 991 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2246, 26 L.Ed.2d 795 (1970) ; United States v. De Sisto, 329 F.2d 929 (2d Cir.), *cert.*

*denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

5. See United States v. Birrell, 447 F.2d 1168 (2d Cir. 1971) ; United States v. Freedman, 445 F.2d 1220 (2d Cir. 1971) ; United States v. Egenberg, 441 F.2d 441 (2d Cir. 1971) ; United States v. Klein, 340 F.2d 547 (2d Cir.), *cert. denied,* 382 U.S. 850, 86 S.Ct. 97, 15 L.Ed.2d 89 (1965).
   The defendant's objection that the evidence should not have been received in the government's direct case is without substance. The issue of knowledge was the hard core of the case, as was acknowledged in defense counsel's opening; moreover, knowledge is at issue as an essential element of the government's case. *See* United States v. Freedman, 445 F.2d 1220 (2d Cir. 1971) ; United States v. Klein, 340 F.2d 547 (2d Cir.), *cert. denied,* 382 U.S. 850, 86 S.Ct. 97, 15 L.Ed.2d 89 (1965) ; *cf.* United States v. De Cicco, 435 F.2d 478, 483 (2d Cir. 1970).

6. *See* United States v. Spica, 413 F.2d 129, 131 (8th Cir. 1969) ; Kraft v. United States, 238 F.2d 794, 802–03 (8th Cir. 1956) ; C. McCormick, Evidence § 157, at 331 (1954) ; *cf.* United States v. Freedman, 445 F.2d 1220 (2d Cir. 1971).

that bank under a name other than his true name. While an issue has been raised as to whether the note bears the defendant's signature or was authorized by him, the crucial issue is not the validity of the note, but centers about the Treasury Bills. The basic fact is clear and established—the bills were delivered by the defendant to Kane and were used to pay the note and to credit the defendant's account with the surplus. A statement reflecting the transaction, the payment of the note and the credit to the defendant was mailed to the address recorded at the bank as defendant's mailing address under his assumed name.

■ The defendant challenges the inference which the law permits, but does not require, from the established fact of possession of the recently stolen bonds when he handed them over to Hisey (and also to Kane, the former bank employee in the similar act transaction), that he knew the bonds were stolen. While it may well be that a constitutional challenge is always in order, it is rather late in the day to strike down as constitutionally impermissible an inference based upon possession of the recent fruits of a crime absent a reasonable explanation of such possession. The doctrine is of long standing—first accepted by the Supreme Court in 1896 in Wilson v. United States,[7] consistently adhered to in our circuit,[8] and reiterated most recently in United States v. Izzi[9] and United States v. Coppola.[10] The defend-

ant contends that such authorities have been undermined by such recent cases as Leary v. United States[11] and Turner v. United States,[12] each of which involved a statutory presumption, or, more correctly, an inference authorized by statute. The same contention was advanced in the *Coppola* case, *supra,* where securities stolen from two to five months previously were offered as collateral for a bank loan. Our Court of Appeals rejected the argument of the appellants that the inference of participation in the interstate transportation of the stolen bonds was impermissible under *Turner* and *Leary,* holding those cases inapplicable to an inference recognized by common law. The court not only affirmed its earlier ruling in United States v. De Sisto[13] that possession of recently stolen goods permits an inference of guilty knowledge, but also indicated it may warrant an inference that the possessor was the thief or a participant in the theft. If the inference of participation in the theft or interstate transportation of the stolen bonds based upon possession is "rationally supported by common sense and every day experience," [14] the inference of knowledge of their illicit character is even more compelling.

Upon all the evidence, the court finds that the government has sustained its burden of proof as to the essential elements of the crime charged in the indictment, and the defendant is found guilty.

The foregoing shall constitute the Court's Findings of Fact.

7.  162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090.

8.  *See, e. g.,* United States v. Lefkowitz, 284 F.2d 310, 313 (2d Cir. 1960).

9.  427 F.2d 293 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 794 (1970).

10.  424 F.2d 991, 993–94 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2246, 26 L.Ed.2d 795 (1970).

11.  395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

12.  396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

13.  329 F.2d 929 (2d Cir.), *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

14.  United States v. Coppola, 424 F.2d 991, 993 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2246, 26 L.Ed.2d 795 (1970). *See also* United States v. Johnson, 140 U.S.App.D.C. 54, 433 F.2d 1160 (1970), which held that not only was the inference permissible without violating due process requirements, but also that it did not violate the defendant's right against self-incrimination.