**UNITED STATES of America**

v.

**James RISPO and George Rispo.**

**Crim. No. 70–250.**

United States District Court,
E. D. Pennsylvania.

Feb. 11, 1972.

John F. Penrose, Asst. U. S. Atty., Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for plaintiff.

Bernard L. Segal, Segal, Appel & Natali, Philadelphia, Pa., for defendants.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Presently before this Court is defendants' Motion for a new trial or judgment of acquittal. The defendants stand convicted by this Court sitting with a jury on all three counts of an Indictment charging them with transportation of a stolen firearm in interstate commerce,[1] transfer of ten firearms to a person who is a resident of another state,[2] and conspiracy as to both substantive offenses.[3]

At trial, the following facts were revealed. On October 12, 1968, certain firearms were stolen from the home of one Martin M. Maliner. During November of the same year, both defendants, residents of Philadelphia, arranged through one Martin Pecarsky to sell a pistol, identified as having belonged to Maliner, to Sergeant Higby of the Pemberton Township, New Jersey, Police Department. The sale was consummated when Pecarsky picked up the pistol at George Rispo's house and transported it to Higby in New Jersey. In December, a subsequent sale of ten handguns, also identified as having belonged to Maliner, was arranged through direct telephone conversations between the defendants and Sergeant Higby. The purchas-

[1] In violation of 15 U.S.C. § 902(g) which provides:

It shall be unlawful for any person to transport or ship or cause to be transported or shipped in interstate or foreign commerce any stolen firearm or ammunition, knowing, or having reasonable cause to believe, same to have been stolen.

[2] In violation of 18 U.S.C. § 922(a) (5) which provides:

It shall be unlawful for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe resides in any State other than that in which the transferor resides (or other than that in which its place of business is located if the transferor is a corporation or other business entity) ; except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes.

[3] In violation of 18 U.S.C. § 371 which provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

er was Trooper Walter Wasyluk, of the New Jersey State Police. At this second sale which took place in Pennsylvania but was made to a resident of New Jersey, James Rispo was present. During a later valid search of George Rispo's home, two shotguns were found which also were identified as having been taken in the burglary of Maliner's home.

The defendants allege several errors in the trial of the case and we shall consider them now.

## I.

At the end of the defendant's trial, this Court instructed the jury that it could infer from the defendants' unexplained possession of recently stolen firearms, knowledge on their part that the guns actually were stolen. This particular point of law was given to the jury because included among the elements of the crime charged in the first Count of the Indictment was one requiring knowledge on the part of the offender that the weapons involved were stolen.[4] The propriety of such an instruction has long been accepted. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887; United States v. Pounds, 323 F.2d 419 (3rd Cir. 1963). Defendants, however, contend that the Court erred in giving this instruction in light of Commonwealth v. Owens, 441 Pa. 318, 271 A.2d 230 (1970) in which the Pennsylvania Supreme Court reversed a conviction based primarily upon an application of the same "knowledge presumption" involved herein. The potential force of this decision upon the case at bar arises not only from the fact that it relates to the criminal law of the state in which this district is situated but also from the fact that it is founded primarily upon two recent Supreme Court cases: Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1960).

Having carefully examined these cases we find that neither the Leary and Turner cases nor the Owens case is determinative of the validity of the instructions given by this Court in the case at bar.

Leary and Turner were convicted under separate federal statutes, relating to marijuana and narcotic drugs respectively, each of which contained a similar passage allowing a trial court to presume from mere possession of marijuana or of a narcotic drug, knowledge on the part of the possessor that it was illegally imported into the United States.[5]

In the *Leary* case, which the *Turner* case followed, the Supreme Court determined that a criminal statutory presumption is unconstitutional "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, supra, 395 U.S. at p. 36, 89 S.Ct. at p. 1548. The Court examined the sources of marijuana and discovered that the size of the domestic harvest had greatly increased since the law was passed. So significant in quantity—and apparently in quality—had the home grown variety become that the user himself could not necessarily determine whether his marijuana had been imported or not. In overturning the conviction, the Court concluded that the underlying premise of the presumption was no longer factually valid and thus the presumption itself could not constitutionally serve as a basis for a conviction.

In considering the Turner conviction, the Court separated the two types of narcotic drugs involved. As to cocaine, which it found to be grown domestically, the Court echoed its decision in Leary. But as to heroin, which it found to be almost entirely imported, the Court let the presumption stand.

---

4. See fn. 1.

5. Leary was convicted under 21 U.S.C. § 176a; Turner was convicted under 21 U.S.C. § 174.

The decisions in Leary and Turner are instructive but are not determinative of the case at bar. Any conscientious reading of these cases, especially the Turner case, leads to the conclusion that these decisions did not condemn presumptions generally nor even statutory presumptions in particular, but only certain of the statutory presumptions that were before the Court. Thus, in considering the validity of the presumption at bar, which is different from those involved in Leary and Turner, and is, in fact, a presumption that is not even statutorily created, it is the reasoning behind these decisions that assumes importance and not the result itself. We shall adopt the "more likely than not" test used by the Supreme Court in Leary and Turner to determine the validity of the knowledge presumption as to the case at bar.

This "more likely than not" test is the same test that the Pennsylvania Supreme Court adopted in weighing the same presumption in *Owens*. Commonwealth v. Owens, supra. Had Owens and the case at bar involved a statutory presumption as did Leary and Turner, Owens would be a strong precedent for us. But the Owens case did not, and the case at bar does not, involve a statutory presumption but rather a presumption which is, in essence, "a long recognized rule of Common Law. I Wigmore, § 152." United States v. Coppola, 424 F. 2d 991 (2nd Cir. 1970). The significance of this difference was set forth in United States v. Hood, 422 F.2d 737, at p. 741, et seq., (7th Cir. 1970):

> The cases cited by the defendant involve the constitutionality of presumptions created by statute. In such statutory presumption cases the court must ask whether the legislature could determine "with substantial assurance that the presumed fact is more likely than not to flow from the proved fact * * *." Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). When testing a common law presumption in a jury instruction a court is faced with a different question, namely, whether the

facts before it indicate that the presumed fact is more likely than not to flow from the proven fact in the given case. Since a legislative enactment is not involved and the accompanying policy against legislative interference with the presumption of innocence is inapplicable, the abstract rule of law embodied in the jury instruction need not be tested apart from the facts before the court.

■ Since the validity of a Common Law presumption must be determined on a case by case basis, we cannot blindly follow *Owens* as the defendants would have us do. Even the Pennsylvania Supreme Court realized the limited scope of its decision noting in its Opinion that it had "little doubt that the knowledge presumption concerning receipt of stolen goods is constitutionally infirm, *at least as applied to the circumstances of this case*." Commonwealth v. Owens, supra, 441 Pa. at p. 324, 271 A.2d at p. 233 (emphasis ours). Owens can merely serve as a guide for us as to what kind of factual situations the presumption ought not to apply.

In *Owens*, the prosecution only showed that defendant had sold a hand gun, apparently of not uncommon make, that had been reported stolen. The unfortunate popularity of hand guns and the common uninhibited selling and trading of these "Saturday Night Specials" on the street corners in the unhappier neighborhoods of urban America, cast doubt upon the question of whether it was more likely than not that Owens knew if the gun he possessed had been stolen. The prosecution, therefore, could not employ the presumption alone to prove its case because, in doing so, it was, in essence, shifting the burden of proof to the defendant to demonstrate his innocence.

■ By contrast, in the case at bar, the defendants' modus operandi manifests an understanding and sophistication which leads to the conclusion that they were aware of every aspect of the deals in which they participated. The

sales involved not a single, common handgun but in one instance a pistol of unusual foreign manufacture, and in the other not one but a quantity of weapons. The stealth employed in the sale of the weapons further indicates that the defendants knew something which made them reluctant to sell these weapons through the channels normally used by collectors or dealers. We are convinced that the evidence presented showed that it was more likely than not that the defendants knew of the status of their weapons. The presumption in the case at bar was not used to actually prove that the defendants knew that the guns were stolen, as was done in *Owens,* but merely to make possible the drawing of that conclusion by the jury.

We find that the instruction was properly given and accordingly that there was no error.

## II.

■ During the course of trial, the government was permitted to introduce into evidence over defendant's objection two firearms which were taken during the burglary of Maliner's home and which were later found during a search of George Rispo's home. These weapons were not, however, involved in the crimes at bar. Defendants argue that because the weapons were evidence of crimes not before the Court their introduction was prejudicial.

It is true that the weapons were evidence of other crimes, but this fact, alone, does not negate their value as evidence to the crimes at bar. Specifically these weapons in question helped to establish a relationship between the defendants and the weapons actually involved at bar. The pertinent rule of evidence was succinctly stated in this Circuit in United States v. Carter, 401 F.2d 748, at pp. 749–750 (3rd Cir. 1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797, wherein the court said:

> Evidence of other offenses, wholly independent of the one charged, is generally inadmissible. This rule is subject to some well-established exceptions, one of which was particularly appropriate in the case at bar, viz., where the other offense is logically connected with that charged, or where the act is so closely and inextricably a part of the history of the guilty act itself as to form part of the common plan or scheme of criminal action. Kreuter v. United States, 376 F.2d 654, 657 (10 Cir. 1967); Robinson v. United States, 366 F.2d 575, 578 (10 Cir. 1966); United States v. Crowe, 188 F.2d 209, 212 (7 Cir. 1951).

Because we find that the weapons in question were relevant to the government's case, we conclude that the evidence was properly admitted and that there was no error.

## III.

■ At trial, Sergeant Higby testified that a telephone call relating to the events of the case was made to his house on January 30, 1969. He did not say who made the call, from where the call was made, or what the conversation was about. Defendants objected to this testimony as hearsay arguing that Higby himself stated that his wife had answered the call. We fail to find any prejudice since a Bell Telephone Company representative testified from the company records that a call charged to the telephone number of George Rispo was made to the Higby residence on January 30. (N.T. 292–293). Since the fact that a telephone call was made to the Higby's which related to the case at bar was independently established, if there was error at all, it was at most harmless.

## IV.

■■ Under cross-examination, Sergeant Higby indicated that he had made both a sight and voice identification of James Rispo as one of the conspirators. Defendants now contend that he lacked a solid foundation upon which to base these identifications. However, at no time did defendants request that Higby's "in-court identification" of James Rispo be stricken. Clearly, the credibility of a

witness' identification is within the province of the jury who may accept or reject it. It never was and is not now at this late date up to us to determine its admissability. Moreover, were it erroneously admitted, trial counsel's failure to move to strike the testimony forbids him from raising this issue now. United States v. Newton, 442 F.2d 622 (9th Cir. 1971).

## V.

Defendants contend that the government failed to demonstrate that the defendants had the requisite criminal intent for the crime of transporting stolen weapons across state lines. In arguing this contention, they first assume that the government relied upon the testimony of an unindicted co-conspirator, Martin Percarsky, to prove that the Russian automatic delivered to Sergeant Higby in New Jersey, on December 13, 1968, was known by the defendants to have been stolen. Not only did the government not rely upon the testimony of Martin Percarsky for this purpose, it could not have done so. This is a ridiculous assumption because Percarsky testified that he did not know that the weapons were stolen. The Rispo's knowledge of the origin of the weapons, was demonstrated by means of the "knowledge presumption" which we have already found to have had been validly applied to the facts of this case.

Defendants also assume that the government relied upon the testimony of Martin Percarsky to prove that the ten handguns were transferred to persons residing in another state. This is another ridiculous assumption since, at trial Percarsky denied such knowledge. It is evident from the facts brought out at trial that although Percarsky was ignorant of the ultimate destination of the handguns, the Rispos were not. Clearly, Percarsky's ignorance is not determinative of the defendant's knowledge and intentions. Defendant's contention is without merit.

## VI.

One Joseph Zimmie testified as a character witness for the two defendants. Counsel limited the scope of his examination to November and December, 1968, the two months during which the crimes at bar occurred. The government's attorney in his cross-examination asked the witness whether he had heard that the defendant James Rispo had been arrested in January, 1969, one month after the crimes at bar, for another crime to which he had subsequently pled guilty in May, 1970. Defendant contends that it was error for the Court to permit the government to question the witness about an event which occurred after the time of the crimes involved herein.

The scope of cross-examination of a character witness lies within the "sound discretion" of the trial judge. United States v. Alker, 260 F.2d 135 (3rd Cir. 1958); cert. den. 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571; rehearing denied 359 U.S. 950, 79 S.Ct. 723, 3 L. Ed.2d 683. It has been widely held that cross-examination of character witnesses should be limited to a time before the commission of a crime lest the witness' opinion of defendant's character be colored by reports of his association with the crime itself. See Vol. V Wigmore on Evidence, 3rd Ed. § 1617. It would seem obvious, however, that in cases in which prejudice to the person whose character is at issue would not result, events occurring after the crime would become significant in bringing before the Court as complete as possible representation of defendant's character.

In the case at bar two reasons can be asserted for not adhering to the general rule. First, the incident about which Zimmie was cross-examined occurred but one month after the crimes at bar; it was not until May, 1970 that the indictment in the case at bar was brought. Not in January 1969 would, nor until May, 1970 could, the crimes at bar affect defendant's reputation in the

community. Secondly, the crimes at bar cannot have influenced Zimmie's conclusions as to the community's opinion because he said during cross-examination, "Alls I know, they can talk good about the boy; I don't know anything bad." (N.T. p. 383). It is evident that this aspect of the cross-examination was proper under the circumstances and did not prejudice the defendant James Rispo.

■ Defendant George Rispo feels prejudiced by that part of the cross-examination of Zimmie in which he was asked whether he had heard that George Rispo's employer felt "his reputation was not at all good." He contends that this remark having been left unsupported by the government was prejudicial to him. While the remark did remain unsupported, taking into consideration all of the evidence of the case, and the weakness of Zimmie as a character witness, we do not feel that it was so prejudicial as to affect the jury's verdict. See United States v. H. Wool & Sons, 215 F.2d 95 (2nd Cir. 1954). Defense counsel's objection to the remark was sustained and the matter was dropped conclusively at that point. See Cranston v. Baltimore & Ohio Railroad Co., 258 F.2d 630 (3rd Cir. 1958). The error must be classified as harmless.

## VII.

■ James Rispo took the stand in his own defense and was cross-examined by the government's attorney as to the guilty plea he entered in the state court to a three count indictment charging him with receiving stolen goods and conspiracy. He contends that the government's attorney prejudiced him by misstating the number of counts in the indictment. Although the government's attorney did say at first that there were thirteen counts in the indictment, he later corrected himself and thereby obviated any prejudice to the defendant.

■ The defendant also contends that the Court erred in permitting the government's attorney to cross-examine him about the details of the charges involved in that state indictment. Whereas it is proper for the prosecution to impeach the credibility of a defendant by citing his prior felony convictions, United States v. Evans, 398 F.2d 159 (3rd Cir. 1968), it is improper for it to delve into the details of the crimes involved because this information is not required for strictly impeachment purposes. Tucker v. United States, 409 F.2d 1291 (5th Cir. 1969). If the prosecution does question the defendant about more than just the nature of the crime and the time and place of it, a reversal may or may not be required depending upon the circumstances of the particular case. United States v. Mitchell, 427 F.2d 644 (3rd Cir. 1970).

■ We do not feel that the circumstances require the awarding of a new trial in this case. All that the government's attorney elicited about the details of the crime under consideration were the kind of goods involved and the name of the company from which they had been taken. Nothing in this information, we believe, could have inflamed the jury or prejudiced them against the defendant as to the crimes at bar. In the charge, the Court reminded the jury that "[e]vidence of a defendant's previous conviction of a felony is to be considered by the jury only insofar as it may affect the credibility of the defendant as a witness." Therefore we conclude that there was no error.

■ Even were this cross-examination to be considered error, we feel that the error must be considered harmless because of the overwhelming evidence the government mustered against the defendant. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Accordingly defendants' Motion for New Trial and/or Judgment of Acquittal is denied.