ALFRED LAMOUREUX, administrator, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.

SAME *vs.* SAME.

SAME *vs.* SAME.

Worcester.    October 5, 1897. — October 21, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Loss of Life — Railroad — Grade Crossing — Action — Negligence —*
*Evidence — Damages.*

In an action against a railroad corporation for causing the death of the plaintiff's
intestate at a grade crossing, by failure to give the signals required by statute,
a witness testified that "what took my attention was the train came along and
there was n't any whistle or sound from the train, and I says to myself, 'That's
funny'"; that "it did n't whistle or ring, and I sat there right along until I
heard a noise," which noise was explained as one that happened after the acci-
dent; and that he heard no electric gong or other sound of warning during the
same time. *Held*, that the evidence was sufficient to show absence of signals.

If the signals required by statute were not sounded, the jury, in an action against
a railroad corporation for causing the death of a traveller in the evening at a
grade crossing, may infer that the absence of them occasioned the accident,
where he was seen driving at a trot a mile and a half from the crossing, and
then was awake, and the train was an extra one.

If the plaintiff in an action, in cross-examination of a witness for the defendant,
puts in evidence a conviction of crime to discredit him, the defendant cannot,
upon re-examination of the witness, introduce evidence to explain the conviction.

At the trial together of three actions against a railroad corporation for causing the
death of the plaintiff's intestates, one of whom died instantly, one in two weeks,
and one, a child, in two and a half months after the accident, the judge, in the
course of his charge, stated that possibly there was evidence of conscious suf-
fering of one of the intestates, but, at the defendant's request, instructed the
jury, at the close of the charge, that the plaintiff could not recover damages for
conscious suffering.   The verdict in the second case was $1200 larger, and that
in the third case $600 larger, than the one in the first case.   *Held*, that there
was no error in the instructions; and that this court could not draw inferences
that the jury were misled from the differing size of the verdicts.

THREE ACTIONS OF TORT, under Pub. Sts. c. 112, § 213, by
the administrator of the estates of Alfred Lamoureux, Rosilda
Lamoureux, and Edmond Lamoureux, respectively, for causing
their deaths.    At the trial of the cases together in the Superior
Court, before *Gaskill*, J., it appeared that, on August 30, 1896,
at about eleven o'clock in the evening, the first named intestate,

with the other two, who were his wife and child, were struck, while in a wagon drawn by one horse, by a train at the crossing of a highway at grade by the defendant's railroad in Northbridge; that, as the result of the collision, Alfred Lamoureux died instantly, Rosilda died on September 13, 1896, and Edmond died on November 13, 1896; and that the crossing where the accident occurred was one to which the provisions of Pub. Sts. c. 112, § 163, applied.

The jury returned a verdict for the plaintiff in each case, the verdicts being for $1,466.50, $2,641.51, and $2,080 respectively; and the defendant alleged exceptions, which appear in the opinion.

*F. P. Goulding*, (*W. C. Mellish* with him,) for the defendant.

*H. Parker*, for the plaintiff.

HOLMES, J.   These are actions of tort, brought under Pub. Sts. c. 112, § 213, for causing the death of the plaintiff's intestates by failing to give the signals required by § 163. The plaintiff has had verdicts, and the cases are here on exceptions. We take up the questions as they were argued for the defendant.

1. It is urged in the first place that there is no evidence that the engineer of the train which killed the deceased did not ring its bell or sound its whistle. But we think it too plain to need discussion that the evidence was sufficient. A witness testified that " what took my attention was the team came along and there was n't any whistle or sound from the train, and I says to myself, ' That 's funny.' " Even without the last words, which were admissible as a sign of attention, this means that the silence of the bell and whistle attracted the witness's notice, and not merely that she did not observe them. The witness further testified, " It did n't whistle or ring, and I sat there right along until I heard a noise," and the noise was explained as one which happened after the accident. We see no ground for doubting that the witness's testimony to her attention was meant to include the whole time covered by her statement of fact. Other parts of her testimony, tending to show inattention, cannot obliterate what she said on this point. The same witness testified that she heard no electric gong or other sound of warning during the same time.

2. If the signals were not sounded, the jury might infer that the absence of them caused the accident. The deceased Alfred

Lamoureux was seen driving at a trot a mile and a half from the station, and then was awake, as he turned to one side to let the witness pass. The train was an extra train, which there was no reason to expect beyond the general possibility. It was open to the jury to infer that the deceased was awake when he drove upon the track at the crossing, and that if there had been a signal he would have acted as men commonly do when they know that a train is approaching. *Doyle* v. *Boston & Albany Railroad,* 145 Mass. 386, 388. *Johanson* v. *Boston & Maine Railroad,* 153 Mass. 57, 59.

3. The plaintiff, in cross-examination of one of the defendant's witnesses, put in a conviction of crime to discredit him. Pub. Sts. c. 169, § 19. Upon redirect examination the witness was asked to state the circumstances, the evidence being offered to show the extent of the wickedness involved in the act, and to show the circumstances. This evidence was excluded. Logically, there is no doubt that evidence tending to diminish the wickedness of the act, like evidence of good character, which is admissible, does meet, as far as it goes, the evidence afforded by the conviction, since that discredits only by tending to show either general bad character, or bad character of a kind more or less likely to be associated with untruthfulness. *Gertz* v. *Fitchburg Railroad,* 137 Mass. 77, 78. Nevertheless, the conviction must be left unexplained. Obviously the guilt of the witness cannot be retried. *Commonwealth* v. *Gallagher,* 126 Mass. 54. *Gertz* v. *Fitchburg Railroad,* 137 Mass. 77, 80. It is no less impossible to go behind the sentence to determine the degree of guilt. Apart from any technical objection, it is impracticable to introduce what may be a long investigation of a wholly collateral matter into a case to which it is foreign, and it is not to be expected or allowed that the party producing the record should also put in testimony to meet the explanation ready in the mouth of the convicted person. Yet if one side goes into the matter, the other must be allowed to also. We have considered the question as if the offer had been in the most guarded form. As it was made, it was almost identical with the one excluded in *Commonwealth* v. *Galligan,* 155 Mass. 54, 56.

4. There was no error in the instruction about damages. In the course of the charge the presiding judge stated that possibly

there was evidence of conscious suffering of one of the parties, and the statement, if left unexplained, perhaps might have led the jury to think that such suffering could be allowed for in an action under the statute. But, at the defendant's request, the judge cleared this up by instructing the jury in terms that the plaintiff could not recover damages for conscious suffering, and that was the last word spoken about that part of the case. We cannot draw inferences that the jury were misled from the differing size of the verdicts.                    *Exceptions overruled.*