368 P.2d 464

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**John EDWARDS, Defendant and Appellant.**

No. 9525.

Supreme Court of Utah.

Feb. 1, 1962.

**52**

Wendell P. Ables, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., for respondent.

CALLISTER, Justice.

Defendant was convicted of "profiting from the earnings of a fallen woman."[1]

The information against him charged:

"John Edwards procured a female person, to wit Shirley Jean Edwards (his wife), for the purpose of prostitution for a male person by personal solicitation for consideration of value paid by the male person for whom such female was procured. * * *"

In appealing from his conviction, the defendant, among other things, alleges that error was committed by the trial court in permitting the prosecutor to question him, upon cross-examination, concerning his wife's plea of guilty to a charge of prostitution and his incarceration for misdemeanor crimes.

As an outgrowth of the circumstances leading to the charge against the defendant, his wife was charged with the crime of prostitution, presumably under an Ogden City ordinance. Upon cross-examination of the defendant by the prosecutor, the following took place:

"Q. You testified that you have known this and that she would never do such a thing?

"A. Yes sir, I never knowed her to do that, sir. That is the truth as Jesus could tell you.

"Q. Now you were with your wife when she was booked in this station on the night of February 17th, booked for prostitution?

1. 76–53–10, U.C.A.1953.

"Mr. Frorer, [counsel for defendant at the trial]:

"Objection.

"The Court:

"Objection overruled. You may ask.

"Q. You were right there when she was booked for prostitution and gave her name, Shirley Jean Edwards, and stated she was your wife?

"A. Yes sir.

"Q. You are aware of the fact that she pled guilty to that charge, are you not?

"A. She didn't know what 'prostitution' means because she never heard of 'prostitution' in her life. In fact, she can't hardly speak English; she don't know what the word 'prostitution' means. I have never spoke that word to her."

■ The State concedes that a plea of guilty by one of two persons charged with a crime arising from the same incident is not usually admissible as against the other to prove guilt.[2] However, it contends that the fact that defendant's wife pleaded guilty was relevant and admissible to impeach the defendant's veracity with respect to his wife's character.

The defendant saw fit to put his wife's character in issue. Counsel for defendant, in his opening statement, said:

"His wife is not a fallen woman which I think will come out later, which is one of the elements that the prosecution is required to prove."

The defendant, upon direct examination, testified:

"Q. To your knowledge, what type of woman is your wife?

"A. My wife is a working woman and kind of a business woman. She don't believe in doing wrong. She doesn't curse.

"Q. Would you call your wife a fallen woman?

"A. I believe she is true to her husband and I believe she is a woman that don't do prostitute because I have never known her to do it."

■ Ordinarily, the fact that a confederate or accomplice of the defendant pleaded guilty, or has been found guilty, is inadmissible on the issue of the guilt of the defendant who is separately tried. Such was the case in State v. Justesen,[3] and the court there properly held that it was error to admit evidence of the confederate's plea of guilty.

2. State v. Justesen, 35 Utah 105, 99 P. 456; 2 Wharton, Criminal Evidence, 12th Ed., Sec. 439; 48 A.L.R.2d 1016.

3. Supra, n. 2.

In the instant case, the defendant having placed in issue his wife's character, the fact that she had pleaded guilty to the crime of prostitution tended to impeach the defendant's assertion that his wife was a woman of good character, and thus impeach his veracity.[4] Therefore, the questions propounded relating to the wife's plea of guilty were proper for this limited purpose. An instruction to the jury restricting its consideration of this evidence to this limited purpose certainly would have been in order. However, no such instruction was requested by the defendant.[5]

Upon direct examination, the defendant testified:

"* * * I have been working for her honestly. I have never sold her to no man in my life. Honest to God I haven't. I have never sold my wife and I wouldn't do that and I believe in the Bible. My dad is a twenty-second degree Masonic."

On cross examination the following occurred:

"Q. You state that you wouldn't do such a thing as pander or something like that.

"A. No sir. I raise my hand to Jesus and expect to go to Hell if I did. It is the truth. I expect to go to Hell when I die if I say that because I always believe in God and I continue to believe in him.

"Q. You were not working on June 9, 1960 in Las Vegas, Nevada were you? You were not working on that day?

"A. No sir, I guess, I worked for a Jew down there for a while.

"Q. Did you spend some time in jail down in Las Vegas, Nevada for being drunk?

"Mr. Frorer [counsel for defendant]:

"I object.

"The Court:

"The objection is overruled, you may ask him.

"Q. That is June 9, 1960 in Las Vegas, Nevada. You were not working then, were you?

"A. I was working there when I was there, yes sir, for a Jew there.

"Q. How long were you in jail down there for being drunk during the month of June?

"A. Well, I think it was 10 or 15 days, something like that. It may have been one day. I don't exactly know the month. I know I was in there for

---

4. See: State v. Hougensen, 91 Utah 351, 64 P.2d 229.

5. State v. Greene, 33 Utah 497, 94 P. 987. It should also be noted that no objection was actually made to the question concerning the wife's plea of guilty.

being drunk, that is what I did time for, is being drunk.

"Q. Let's go back in the month before that, May 24, 1960, just less than a month before. The month of May, you were not working during that month, were you full time?

"A. I have been working off and on. I never missed a month of work in my life.

"Q. You were in jail in Los Angeles part of the time for being drunk in a public place?

"A. I guess I was not, I was working for a Jew.

"Q. You working in the month of May of 1960?

"A. You can't work when you are in jail.

\*   \*   \*   \*   \*   \*

"Q. You spent time in jail in San Bernardino, California in November of 1960?

\*   \*   \*   \*   \*   \*

"A. Yes, for vag."

Defendant contends that the foregoing cross-examination was improper and prejudicial error. The State seeks to justify it upon three grounds. First, that the defendant injected his own character into the proceedings as being a hard-working man and thus opened the door for rebuttal. Sec-ond, that the accused, by his testimony, attempted to show a steady pattern of employment which the State was entitled to disprove. And, third, that the cross-examination tended to show a motive for the crime.

A defendant in a criminal case may not be questioned as to matters wholly remote from the question of guilt or innocence of the crime charged, so as to amount to a general assault upon his character. [6] The cross-examination, here complained of, relates to matters wholly remote and collateral. To hold that it was justified merely because the defendant had testified that "I have been working for her honestly" is untenable. Whether or not the defendant was in jail for what appears to be violations of city ordinances, and therefore not working at those times, on occasions some nine or 10 months previous to the alleged crime (February 17, 1961) is certainly collateral and remote to the issue of his guilt or innocence of "profiting from the earnings of a fallen woman." A defendant need not answer, and therefore the prosecutor should not ask, questions which have a tendency to degrade his character, unless such answers relate to the very fact in issue or to a fact from which the fact in issue would be presumed. [7]

The argument that the cross-examination was justified because the defendant's drink-

6. 58 Am.Jur., p. 373.

7. 78-24-9, U.C.A.1953.

ing habits and the interruption of his work because of his sojourns in jail provided a motive is without merit.

The cross-examination could do nothing more than to degrade the defendant's character and prejudice the jury against him. Defendant's objection to this line of questioning should have been sustained. Failure to do so was prejudicial error.[8]

Reversed and remanded for new trial.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

---

8. State v. Dickson, 12 Utah 2d 8, 361 P.2d 412; State v. Herrera, 8 Utah 2d 188, 330 P.2d 1086.