UNITED STATES of America,
Appellee,

v.

Richard PLANTE, Defendant, Appellant.

UNITED STATES of America,
Appellee,

v.

Bruce TRANT, Defendant, Appellant.

Nos. 72-1133, 72-1145.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1972.

Decided Jan. 10, 1973.

Certiorari Denied April 23, 1973.
See 93 S.Ct. 1932.

David S. Mortensen, Boston, Mass., by appointment of the Court, with whom Hale & Dorr, Boston, Mass., was on brief, for Richard Plante, appellant.

David H. Lamson, Boston, Mass., by appointment of the Court, with whom Hamilton & Lamson, Boston, Mass., was on brief, for Bruce Trant, appellant.

Richard E. Bachman, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., and George V. Higgins, Asst. U. S. Atty., were on briefs, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Judge.

These are appeals from convictions for armed bank robbery committed on October 13, 1971. Briefly, the facts are these. The robber who stood at the tell-er's window holding a pistol was inescapably identified by virtue of a hidden camera. This man, Delvental, pleaded guilty to the robbery, and to a repeat performance at the same bank three weeks later. He was sentenced shortly before the trial to ten years imprisonment for each crime, to be served concurrently. Called by the government, Delvental testified that while he held up the teller, appellant Plante stood inside the door, holding a shotgun. One Babbitt, a teller, confirmed this testimony, and identified Plante. (No other robber was present. Codefendant Trant, the second appellant, whom we treat separately later, was, according to Delvental, the getaway driver, and codefendant Muise, who was acquitted, allegedly supplied the guns.) Iannaco, the absent mastermind of both robberies, also pleaded guilty, and received twelve years. Iannaco testified for the defense, stating that a man named Steve, rather than Plante, was the other man in the bank.

Plante's primary complaint concerns the fact that, although he did not testify, so as to be subject to impeachment, it was brought to the jury's attention that he had been in jail before his present arrest. We note at the outset that only the fact was revealed, not the reason. This revelation occurred in a number of ways. In the course of his testimony Delvental, in acknowledging that he had a prior criminal record, volunteered that Plante had one, too. The court, on request, ordered this stricken and instructed the jury to disregard it. While this instruction was terse and unexplained at the time, the court's ultimate charge to the jury on the subject was complete. On another occasion, on direct examination Delvental was asked how long he had known Plante.

A. Well, I was in MCI Concord and —I really don't know. Q. About how long have you known him prior to that? A. Two months. Q. Is this prior to October of 1971? A. Well, about a month prior to that.

Plante moved at the sidebar for a mistrial, and the court denied it.[1] No directions to the jury were asked for, or given.[2] Next, defendant complains that on cross-examination of defense witness Iannaco the government brought out that he had been in Lynn, Massachusetts, "overnight" (which clearly meant in the Lynn jail) with Plante three weeks before the robbery, and that his first meeting with Plante had been in a state prison institution eight months prior to that. And, finally, defendant says,

> "The prejudice and unfairness of this [prison meeting] was sealed in concrete when Officer Mullen [of the Lynn police] was later permitted to testify that he took a police photograph, or 'mug shot', of Plante, which was then shown to the jury."

■■ The first of defendant's complaints is a regrettable circumstance. In the light of the prompt action on the court's part, however, we do not consider it a cause for reversal.[3] *Compare* United States v. Stromberg, 2 Cir., 1959, 268 F.2d 256, 269, cert. denied, Lessa v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102, with Tallo v. United States, 1 Cir., 1965, 344 F.2d 467, 468–469. The Lynn episode, including the mug shot which was taken by Lynn police officer Mullen, was evidence introduced by the government in rebuttal of what proved to be a misguided attempt on Plante's part to impeach the testimony of the bank teller's identification

of him as having a mustache, but no beard. He called witnesses to show he was bearded at various times prior to the robbery. These witnesses included his brother, who testified that Plante was bearded on September 20. The government, in response, offered a mug shot taken in Lynn on September 22, clearly showing no beard. Officer Mullen, in addition, testified that approximately ten days later, *i. e.*, about ten days before the robbery, Plante was still clean-shaven.

■ On the general question of admissibility, this seems a classic case where there were valid independent reasons for introducing testimony which happened to include an otherwise impermissible disclosure of previous criminal involvement. Dirring v. United States, 1 Cir., 1964, 328 F.2d 512, cert. denied 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052.[4] Plante complains that the court should have required the government to accept his offer, made when it appeared that the beard story would blow up in his face, to stipulate that in fact he was not bearded on September 22, and should have excluded the photograph and testimony because of their harmful overtones. The government responds that the stipulation would have been "sterile." We agree. When defendant's tale was exposed, the government was entitled to make autoptic profference. *Compare* United States v. White, 7 Cir., 1966, 355 F.2d 909, where the court, under significantly different circum-

1. The court stated, "[H]e never stated explicitly that the defendant Plante was in Walpole [sic] or MCI. He spoke of himself as being there, but it was not developed in any way. He sort of caught himself in the midst of saying it and continued on the description, with Mr. Bachman sort of easing him away from the point in the absolute best way that the government could possibly do it. I can see no prejudice to this man from that, and deny the motion."

2. Actually these two occurrences are stated in the reverse order, but we are following defendant's brief.

3. We do remark that the court should not have had to wait for counsel to make the request. A court may think that silence on its part is the most inconspicuous treatment. However, this only opens up the possibility of a claim of plain error on appeal.

4. We note that the approach of Rule 404 (b) of the new Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 219 (1973), to become effective on July 1, varies somewhat from *Dirring.* It would not, however, call for a different result in this case.

stances, held that a stipulation should have been accepted. We hesitate only over the testimony that Iannaco first met Plante in jail. The government argued, and the court agreed, that the circumstances of their meeting was relevant. We might agree, too, but if so, it was of precisely the same background relevancy as would be any prior act of misconduct. Accordingly, it was inadmissible for the same policy reasons. *See* post. Only because our review of the record as a whole, considering what was properly introduced, leads us to conclude that the error was not sufficiently prejudicial do we not order a new trial.

■■ Plante next complains of the cross-examination of his witness Kedian. Kedian admitted a conviction for mail fraud on direct examination.[5] On cross-examination, over objection, the government was permitted to inquire as to the details of the offense.[6] Certain formalized rules apply to impeachment of a witness. With rare exceptions, it is not proper to show a prior criminal involvement in the absence of a conviction. *See* United States v. Pennix, 4 Cir., 1963, 313 F.2d 524, 527–531. Conversely, while a conviction may be shown, it is generally not permissible to rehabilitate a witness by having him deny his guilt. The conventional reasons given for this are that the question is collateral, *see, e. g.,* Rung v. Radke, 1954, 44 Wash.2d 590, 269 P.2d 584, 586, and the opponent of the witness should not have to be prepared to try the criminal case. *See, e. g.,* State v. Lapan, 1928, 101 Vt. 124, 138–140, 141 A. 686. *Contra*: United States v. Boyer, 1945, 80 U.S. App.D.C. 202, 150 F.2d 595. The frequent statement that the conviction is "conclusive," *see, e. g.,* Morrissey v. Powell, 1939, 304 Mass. 268, 272, 23 N.E.2d 411; Freeman v. Chicago Transit Au-

thority, 1965, 33 Ill.2d 103, 210 N.E.2d 191, 194–195; merely states the rule, not the reason.

■ Within the limits of not disputing the offense, occasionally the opponent of the witness, and occasionally the proponent, wish to go into the details in order to enhance, or diminish the effect of the conviction. There is a split of authority as to whether the proponent may do so. Dryden v. United States, 5 Cir., 1956, 237 F.2d 517 (proponent may give brief explanatory or mitigating statement); United States v. Crisafi, 2 Cir., 1962, 304 F.2d 803 (proponent may explain, in court's discretion); Lamoureux v. New York, N. H. & H. RR., 1897, 169 Mass. 338, 47 N.E. 1009 (proponent may not); Rogers v. Baltimore & Ohio RR. Co., 6 Cir., 1963, 325 F.2d 134, 137 (proponent may not). The *Lamoureux* court reasoned that the opponent of the witness would normally not be in a position to contradict the explanation. We find this persuasive, although we note that the same reasoning would not apply to prevent the opponent of a witness asking the witness for the details. However, such decisions as there are appear to be uniform that the opponent of the witness may not do this. United States v. Mitchell, 3 Cir., 1970, 427 F.2d 644; United States v. Samuel, 4 Cir., 1970, 431 F.2d 610, cert. denied 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229; State v. Hood, Mo., 1958, 313 S.W. 2d 661. We believe that neither party should be able to develop the details. To permit the opponent to do so tends unduly to prejudice the witness, *cf.* United States v. Tomaiolo, 2 Cir., 1957, 249 F. 2d 683, 687, and in all cases it leads to a collateral issue, with frequently one party or the other being at a disadvantage.

■ In the present case we find no prejudice. In the first place, the wit-

---

5. Many lawyers believe the impact less harmful if prior convictions are brought out on direct. Whatever may be the consequence of this in some areas, determination of the present issue does not depend on who introduces the conviction.

6. The witness was not very specific, but apparently he had purchased, through the mail, a book of checks bearing the printed name of a fictitious person.

ness was only a witness, and not the defendant. Secondly, the details of the witness' particular offense, n. 6, ante, seem very low on the scale of what a jury would normally consider mail fraud to constitute, and hence no threat to the evaluation of the witness' testimony. *Cf.* United States v. Rispo, E.D.Pa., 1972, 338 F.Supp. 662.

■ When the trial started there was a fourth defendant, Tortora. Part way through trial his motion for acquittal was granted, and thereafter he disappeared from the scene. Plante requested the jury be told that Tortora had been acquitted. It was sufficient, however, for the court to inform the jury that he had been "eliminated" from the trial and to instruct them to draw no inferences therefrom of any kind. Plante concedes that the jury should not have been told if Tortora had pleaded guilty. He was not entitled to the best of all possible worlds and to have the jury informed when the opposite occurred. The possibility of confusion was just as great, and hence as unfair, one way as the other. There was no error.[7]

■ None of Plante's other points call for discussion, with one exception. Plante, naturally, wished the jury to believe that Delvental testified for the government because of some hoped-for reward. In this connection he requested the court to instruct the jury that, post trial, Delvental's sentence, although already imposed, could be reduced. This was the fact. Fed.R.Crim.P. 35. There had been no restrictions on this subject during trial. It was well within the court's discretion not to single out some particular aspect in the charge.

■ We take Trant's case last. His court-appointed counsel has tried over-diligently to justify a purely frivolous appeal. In doing so he fails to read the court's charge to the jury on the subject of accomplice witness corroboration as a whole, and in the context that there were three defendants. The court did not say that the bank teller's testimony (as to seeing Plante in the bank) could be taken as corroborating Delvental all the way—viz., as to his testimony that he had illicit dealings, on a separate occasion, with Trant.[8] The clear intendment of the reference to the bank teller was the obvious one—that the jury had two witnesses to consider with regard to defendant Plante. There was no reason to twist this to mean that corroboration of Delvental's testimony as to what occurred inside the bank served to corroborate him regarding matters outside. Nor was there reason to ignore the court's further comments on corroboration. After saying that the jury was "to consider to what extent was Delvental's testimony corroborated," it made the point explicit.

> "Corroboration means additional evidence of a different character to the same point."

While we recognize the brooding presence of 28 U.S.C. § 2255, we have said before that the fact that a defendant desires to appeal does not require counsel to make unsupportable contentions.

The judgments are affirmed.

---

7. In so holding we are not to be taken as saying that a court could not, in its discretion, inform the jury in either case. We merely say it was not error to decline to do so.

8. We might add that Trant's brief does not quote any part of the charge, or indicate why, even arguably, it meant what he assumes as the predicate for his legal contentions.