**William GRABLE, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4971.**

Supreme Court of Wyoming.

Oct. 26, 1979.

James R. McCarty, Casper, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Gay V. Bartels, Asst. Atty. Gen., for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.**

ROSE, Justice.

The only issues we will consider in this appeal from convictions of two counts of forgery and three counts of conspiracy are

(1) whether the trial judge committed reversible error by referring to witnesses as "co-conspirators," and (2) whether the trial judge committed reversible error in not permitting the alleged co-conspirator witnesses to explain their guilty pleas with respect to crimes connected with the crimes with which appellant was charged. We will decide both issues in favor of appellant and reverse and remand.

The other issues raised by appellant were either not briefed with authorities, and therefore we will not consider them, *Scherling v. Kilgore*, Wyo., 599 P.2d 1352 (1979); *Satterfield v. Sunny Day Resources Inc.*, Wyo., 581 P.2d 1386, 1390 (1978), reh. den.; *Rissler & McMurry Co. v. Atlantic Richfield Co.*, Wyo., 559 P.2d 25, 30 (1977); and *Reed v. Wadsworth*, Wyo., 553 P.2d 1024, 1033 (1976); or the problems they present are not likely to arise at a new trial and therefore need not be considered.

Donald Murphy, Leroy Coleman, and Floyd Suchta were defense witnesses. All, along with Grable and others, were indicted and accused of participating in a scheme involving, among other things, theft of an oil pumping unit. At the time of Grable's trial, each of the above-named defense witnesses had pleaded guilty to one crime in connection with the above-alleged scheme, although none pleaded guilty to any crime of which Grable was ultimately convicted.

### Point I—Misconduct of Court

■ The factual context in which the alleged error occurred was set during an exchange between counsel and the trial judge. In the process of presenting the State's case, a defense objection—not relevant to this discussion—was lodged. In disposing of the objection, and with obvious reference to defense witness Coleman, who had not yet testified, the trial judge said— in the presence of the jury:

" . . . [W]e are dealing with a co-conspirator [Coleman] who is no longer in

** ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, by order of this court entered on January 1, 1979.

the case because of having pled guilty. . . . " [Bracketed matter supplied] In response to this gratuitous remark, defense counsel moved for a mistrial, which motion the court refused to grant.

It is ambiguous whether the jury could have interpreted the judge's remark to mean that Coleman was a co-conspirator of Grable's. It is reversible error for the trial judge to remark that a witness is an accomplice of the person on trial since this carries the implication that the defendant's guilt has been determined even though that fact is peculiarly within the province of the jury. *Filbert v. State*, Wyo., 436 P.2d 959, 960 (1968). See, also, *People v. Brown*, 44 Mich. App. 402, 205 N.W.2d 207, 209 (1973).

■ But, even if we understand the judge's remark to indicate that Coleman was a co-conspirator with Suchta and Murphy, the judge's statement was substantively objectionable under *Kwallek v. State*, Wyo., 596 P.2d 1372, reh. den. (1979). *Kwallek* held that when two persons are indicted for separate offenses growing out of the same circumstance, the fact that one has pleaded guilty is inadmissible against the other when offered by the State in its case-in-chief. *Kwallek*, supra, 596 P.2d at 1375. Since Coleman had not yet testified, and since the statement came from the judge, the statement could not be excused as having been made for impeachment purposes under Rule 609, W.R.E.

Additionally, our attention is drawn to an earlier similar objectionable remark by the trial judge in the presence of the jury:

"Mr. Suchta is an indicted co-conspirator in this case, outside the hearsay rule, overruled."

Everything that we have said about the earlier remark by the judge applies to this comment.

### Point II—Refusal of the Court to Permit the Defense Witnesses to Explain Their Convictions

■ Appellant argues that it was reversible error for the trial judge to refuse to allow the defense witnesses to explain their convictions arising out of the same alleged scheme for which appellant was standing trial. It is the appellant's contention that the defense witnesses should have been permitted to explain their convictions for the purpose of negating the inference that appellant must be guilty since three of the people the judge described as co-conspirators admit that they pleaded guilty. Grable also argues that the prosecutor's cross-examinations of the defense witnesses with respect to their guilty pleas exceeded the scope of impeachment allowed under Wyoming Rules of Evidence by leading the witnesses to connect their guilty pleas with the crimes for which appellant was standing trial. Finally, appellant argues that he did not ask witness Murphy about his conviction on direct examination because he understood that the trial judge ruled in advance that questions relating to Murphy's plea would not be allowed.

The importance to appellant of explaining the convictions of the defense witnesses is illustrated by the testimony which defense witness Coleman would have given if he had been permitted to testify. The transcript of the proceeding at which Coleman's judge accepted his plea of guilty of conspiracy to commit a felony reveals that: (1) Coleman claimed that his initial involvement in the scheme was innocent; (2) the judge asked Coleman's attorney, "I am not sure this man is guilty. Do you think he should plead guilty to this charge?"; (3) Coleman and his attorney indicated that Coleman was prompted to enter into the plea bargain to avoid going to the state penitentiary.

We observe that the United States Supreme Court has upheld the validity of a guilty plea made pursuant to a plea bargain and made concurrently with a statement of innocence. In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Court upheld a plea of guilty to second-degree murder made by a defendant who denied guilt but stated that he was making the plea, on the advice of his attorney who had assessed the evidence against him, to avoid prosecution for first-degree murder with its attendant risk of capital punishment.

Shorn of the fact of judicial misconduct, the further allegation that the judge misled the defense and the allegation of prosecutorial misconduct, the issue confronting us—and the issue which is likely to arise on retrial—is: If a witness is impeached under Rule 609, W.R.E., by a conviction arising out of the same circumstances underlying the prosecution of the defendant, does the defense have a right—which it is reversible error to deny—to explain the conviction? We hold that an affirmative answer is required. Under *Kwallek*, supra, the state may not, as part of its case, introduce evidence that a witness has pleaded guilty to a charge arising out of the same circumstances underlying the defendant's prosecution. This rule is based on the sound reasoning that the defendant is entitled to have his trial on its own merits. *Kwallek*, supra, 596 P.2d at 1375–1376. But, Rule 609(a), W.R.E., appears to give either side an absolute right to impeach certain witnesses by showing certain prior convictions, and the rule gives the trial court discretion to allow impeachment for certain other crimes if "the probative value of admitting this evidence outweighs its prejudicial effect." (Appellant has not raised on appeal the issue of whether the impeachments were proper under Rule 609, supra, and we will not consider it.)

There is considerable tension between Rule 609, W.R.E., and the rule of *Kwallek*. To the extent that impeachment is allowed under Rule 609, supra, the tension must be resolved by allowing the impeached defense witness to explain his conviction for any crime which arose out of the same circumstances underlying the defendant's prosecution.

Reversed and remanded for new trial.

RAPER, Chief Justice, dissenting with whom GUTHRIE, Justice Retired, joins.

I join in the separate dissent of Justice Guthrie, Retired, but file this separate dissent as well.

I cannot agree that the district judge's references to certain defense witnesses as co-conspirators is reversible, if error at all, under the circumstances of this case. The trial was complex and difficult. The testimony and evidence presented by the State made it plain that the appellant and the defense witnesses, who were referred to as co-conspirators, were just that—cohorts in the theft and sale of an oil well pumping unit.

It is advisable to set out the exact fashion in which the purportedly offensive statements were made. This will serve to demonstrate just how harmless what was said really was. The witness Gwaltney was testifying to his part in the negotiations to purchase the stolen pumping unit. He went to Casper to discuss the purchase, including a warranty of title, with Floyd Suchta whom he met in a storage yard which belonged to Grable. At that time, Suchta assured Gwaltney the pump was operational and its title clear. It was agreed that until placed in operation on site, payment would not become due.

Gwaltney stated the pump was eventually placed in operation and then started to describe why the purchase price was never paid. It was at this point that the district court made reference to Suchta as an "indicted co-conspirator":

"Q. Do you know of your own personal knowledge, Mr. Gwaltney, if your company ever paid the purchase price?

"A. No, sir, it was never paid.

"Q. And do you know yourself why it was never paid?

"A. Yes, sir, I do, I was, the unit was delivered on or about somewhere about the 21st, the 23rd, 24th of September, and the next day then the erection operation, again disassembly and erection operations began, it took approximately a week to prepare everything and after the unit was delivered and erection and assembling operation began, Mr. Suchta called me in my office in Denver and presented me with—

"MR. McCARTY: Your Honor, again I would object to the comments made by Mr. Suchta, if it wasn't shown Mr. Grable was there.

"THE COURT: *Mr. Suchta is an indicted co-conspirator in this case, outside the hearsay rule. Overruled.* (Emphasis added.)

"MR. McCARTY: Also it seems this man is testifying about a lot of things gained than by his own personal observations, is that true, sir?

"THE COURT: Well, if that arises again, call it to my attention, please.

"MR. McCARTY: May we approach the Bench, Your Honor, please?

"THE COURT: Yes.

"(The following proceedings were had at the Bench outside the hearing of the Jury):

"MR. McCARTY: Your Honor, at this point on behalf of the Defendant Grable, I move the Court for a mistrial. The Court has announced to the Jury that Mr. Suchta is an indicted co-conspirator in this case, that is not the case. At this point the indictment against him has been dismissed and he plead [sic] guilty to another count that was not named in the original indictment. There is no proof that has been presented at this point that Mr. Suchta had been indicted and it put both sides in an unfair position by announcing this to the Jury, at this time, no evidence at all.

"THE COURT: There is in one of these files a sentence and judgment against Mr. Suchta, which is part of the records of this court, if they wish to introduce it I would let it in.

"MR. McCARTY: There is no proof in the case at this point, and Mr. Suchta did not plead guilty to one of the original charges, it was modified.

"THE COURT: I think squarely within the ruling of Jasch against State decided in 1977.

"MR. McCARTY: Mr. Suchta plead [sic] guilty to a new count, which was developed before Your Honor in open court, that was a count of conspiring to receive stolen property, was not one of the counts in the original indictment.

"THE COURT: Mr. McCarty, I will say I think we are squarely within the ruling of Jasch and not hearsay.

"MR. McCARTY: *Again for the record, I am not at this point complaining about the Court's ruling, I am complaining about the Court's announcement to the Jury that Mr. Suchta is an indicted co-conspirator, and that is not the fact.* (Emphasis added.)

"THE COURT: He does, his name appears. The motion for new trial is denied.

"MR. McCARTY: Mistrial."

Thereafter, Gwaltney's testimony was only to the effect that Suchta presented him with an invoice. Gwaltney started to explain what he said to Suchta as to why payment was not made but it involved hearsay of what another person said, not a conspirator so that is where Gwaltney's testimony ended.

The point is that the jury was only advised by the court that Suchta was an "indicted" co-conspirator, not a "convicted" co-conspirator or one who had pled guilty. Suchta testified at length for the defendant, giving his version of the transaction and his involvement. On cross-examination Suchta admitted having been convicted on a plea of guilty to the felony of receiving stolen property (the offense was actually conspiring to receive stolen property). This plea was in regard to the same pumping unit which is the subject matter of the prosecution against the defendant Grable.

It makes no difference what charge Suchta pled guilty to. He was, according to the State's theory, a co-conspirator and that fact is evident throughout the State's case and the defendant's case. While the State failed to satisfy the jury that there was a conspiracy as far as the defendant was concerned and instead found him guilty of forgery, that nevertheless was the thrust of much of its evidence and it was entitled to at least present its case in that light. The trial judge's reference to "Jasch" was to *Jasch v. State*, Wyo.1977, 563 P.2d 1327 where it was held that the statements of a conspirator may be received against the

other and they are not hearsay.[1] More importantly, as held in *Jasch*, in order to use the statements of a conspirator, it is not even necessary that a conspiracy be charged or alleged, as long as the statements are made in furtherance of the common design and plan. It is proper that the jury be informed that Suchta had been indicted along with the defendant Grable. The evidence clearly disclosed that he was right in the middle of the theft and sale. His plea of guilty discloses his involvement in the whole affair. The court's statement neither enlarged nor changed the facts which were properly developed before the jury. The defendant was not even found guilty of conspiring but was found guilty by the jury of forgery in violation of § 6–17, W.S.1957 (§ 6–2–101, W.S.1977); and so even if error, such a statement could not be considered prejudicial.

*Kwallek v. State*, Wyo.1979, 596 P.2d 1372, is completely inapplicable as authority for any holding in this case. In *Kwallek*, the *prosecution* called a witness who had been charged with the exact same crime as the defendant on trial; they had acted together in committing an assault and battery. The prosecution questioned the witness about the events constituting the crime charged. However, at the end of his *direct* examination the prosecutor asked the witness if he had pled guilty to the same charge for which the defendant was being tried and, over objection, the trial judge permitted the witness to answer that he had. It seemed clear that the only purpose served by this testimony was to prejudice the defendant with the fact that the witness had already pled his guilt arising out of the alleged criminal transaction and so the defendant must also be guilty. We properly held that to be reversible error.

In the case before us, the facts were entirely different. In the first place, Suchta did not plead guilty to the same offense with which the defendant was charged and his plea to a different charge was not called to the attention of the jury in the so-called erroneous statement of the judge in the presence of the jury; but, as pointed out later, the defendant attempted to do so. The defendant never objected to the statement of the court on the ground that the court here finds to be erroneous. His objection was that since the indictment against Suchta had been dismissed and he pled guilty to another charge, Suchta was therefore not an "indicted co-conspirator." That he pled guilty to another charge and others were dropped does not relieve him from the fact that he was an "indicted co-conspirator" with defendant.

Furthermore, in defendant's opening statement to the jury, counsel stated that through Mr. Suchta's testimony, the jury would learn, " * * * that Mr. Suchta originally was charged in this matter with the same counts Mr. Grable is to meet with you."[2] That this court can find error in the trial judge's statements, when the defendant himself emphasizes and points out the same facts to the jury, is unbelievable. Even assuming the trial judge's remarks and statement of facts to be erroneous, which I do not, error is cured where the defendant makes use of and admits the same facts alluded to by the court. *State v.*

---

1. This rule is now incorporated in Rule 801(d)(2)(E), W.R.E., declaring that a statement by a co-conspirator is not hearsay if made "during the course and in furtherance of the conspiracy."

2. Counsel's opening and proceedings in connection with Suchta's expected testimony went on:
   "Mr. Suchta will testify that he entered into a bargain with respect to his charges and that all of the counts which were originally charged against him were dismissed, that in open court a new charge which was—
   "MR. BOYNTON: Your Honor, I will object to what goes on here as to what happened in

negotiations, if Mr. McCarty wants to say what he plead [sic] guilty to, but what he did or what plea negotiations were I think highly objectionable in opening argument. I object to it on those grounds.
   "THE COURT: I think that.
   "MR. McCARTY: This is what Mr. Suchta will describe to the Jury.
   "THE COURT: If I permit him. But traditionally any negotiations leading up to a bargain are not evidence.
   "MR. McCARTY: Anyway Mr. Suchta will tell you how, [if] the Court will let him, how he disposed of his charges, * * *."

*Holm,* 1950, 67 Wyo. 360, 224 P.2d 500; *Richey v. State,* 1921, 28 Wyo. 117, 201 P. 154, reh. den. 205 P. 304. The defendant cannot have it both ways.

The majority also cited *Filbert v. State,* Wyo.1968, 436 P.2d 959 as authority. That case is as far out as Saturn, as far as any applicability to this case is concerned. In *Filbert,* reversal was based on a court's instruction that, "The evidence of the witness James Hoblit shows that he was an accomplice of the defendant in the commission of the crime charged against the Defendant. * * *" The court held that the trial court is not permitted to instruct that the witness is an accomplice of the defendant since that carries with it an implication defendant's guilt has been determined when that fact is within the province of the jury. In the case before us, the court did not instruct or tell the jury that Suchta was a co-conspirator but only stated that he was an "indicted co-conspirator," wholly different. *People v. Brown,* 1973, 44 Mich. App. 402, 205 N.W.2d 207, 209, cited by the majority is of the same inapplicable dimensions. In that case, the trial judge advised the jury that an accomplice of the defendant had pled guilty to the same offense for which the defendant was being tried.

In addition, the verdict of the jury in finding defendant guilty of forgery rather than conspiracy has cured any defect, if there was one. Where a defendant is charged with several counts but is acquitted as to some of the counts, the improper admission of evidence in support of any count of which the defendant is acquitted is not reversible error. *State v. Kump,* 1956, 76 Wyo. 273, 301 P.2d 808. Here the majority has treated the trial judge's comment as evidence, in comparing it to the inapplicable authority of *Kwallek.*

Likewise, I do not agree that the trial court's rulings, which had the effect of preventing the defense witnesses who had pled guilty to charges arising out of the same criminal transaction for which appellant was on trial from explaining those guilty pleas, constituted reversible error under the circumstances of this case. Neither the majority opinion nor the appellant's brief cited authority which will support such a conclusion. The majority opinion apparently concludes that the State could properly impeach these defense witnesses with their guilty pleas. In any case, it is clear to me that such was proper under the circumstances of this case:

"A difficult situation may be presented when a codefendant or coindictee, who has pleaded guilty * * *, testifies on behalf of the defendant. In light of Bruton, the prosecuting attorney should exercise care in conducting his cross-examination to avoid unnecessary questions involving the facts alleged in the indictment. If the witness is a key witness for the defendant, however, and if he denies substantial implication in the case, it is hard to see how the prosecutor can be prevented from attacking his credibility by confronting him with his plea. It is unlikely that this situation will often arise. If the witness for the defense has pleaded guilty, it is probable that defense counsel will want to establish this fact at the outset since it will probably buttress his case and will certainly take the sting out of the government's attack on the witness's credibility by proof of his prior crime." 2 Weinstein's Evidence, ¶ 410[06], pp. 410–40 (1979); and see, *State v. McDonald,* 1977, 117 Ariz. 159, 571 P.2d 656; *Swift v. United States,* 10th Cir. 1963, 314 F.2d 860, 863; *State v. Edwards,* 1962, 13 Utah 2d 51, 368 P.2d 464, 466–467; *Zarnik v. State,* Ind.App. 1977, 361 N.E.2d 202, 206–207; Annot., 48 A.L.R.2d 1016 (and Later Case Service).

Thus, under the circumstances here presented, the prosecution could properly confront these defense witnesses with their pleas of guilty. If there was any right for the defense to then seek to give the jury a fuller explanation of the guilty pleas, the defense counsel failed to ask proper questions which were not objectionable. The trial court has great discretion in this regard. Annot., "Right of witness whose credibility has been impeached by evidence of previous conviction, charge of crime, or

arrest, to assert innocence or to explain or show circumstances," 166 A.L.R. 211 (1947); 98 C.J.S. Witnesses § 534, pp. 470–471.

Here the prosecutor's cross-examination of these witnesses was within the proper bounds. Objections were properly sustained when the defense sought to reexamine matters which were not proper under the accepted rules cited above. The majority opinion establishes a rule which says it is reversible error per se to refuse to allow explanation of a guilty plea—and does so without benefit of any authority. The authorities which I have reviewed and which I deem pertinent to this issue are largely to the contrary.

Indeed, the rule which the majority adopts serves to create and extended sequence of events which violate long-established and well-reasoned case law (see 166 A.L.R. 211), as well as the purpose and design of Wyoming Rules of Evidence, Rule 403:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.*" (Emphasis added.)

In this case the defense witness testified essentially that he and the other alleged cohorts in crime, including Grable, had not committed a crime. The State quite properly impeached this testimony by pointing out that the witness had already pled guilty to a crime arising out of these facts. The defense then wanted to explain further this guilty plea and point out to the jury that the only reason the witness pled guilty was to avoid the rigors of prosecution. If we extend the sequence of events this far, must we not also allow the State to call witnesses and present evidence to demonstrate that the State in fact had good evidence against this witness (sort of a mini-trial within the trial—and what if some of this evidence would not have been admissible against the instant defendant?). Should we then not extend this yet one step fur-

ther and let the witness present his exculpatory evidence? And then why should we not go the full course and let the jury decide the witnesses' guilt in the course of determining the defendant's guilt! Obviously there is a good reason for the authority which holds that a witness may not explain a conviction or a guilty plea. That story has come to a conclusion and the chickens have come home to roost. There is no workable way to open the book only to page one, or to open the chicken coop door only a crack. Either we keep the matter closed or we must open it up all together.

The thrust of *North Carolina v. Alford*, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, cited by the majority, did not open the door to the trial of a witness in a case other than his own. The holding of *Alford* was that a guilty plea may be accepted if the defendant intelligently concludes that his interests require entry of a guilty plea *and* the record before the judge contains evidence of actual guilt. The Court there noted that its holding did not mean that a trial judge must accept every guilty plea merely because the defendant wishes to so plead and there is no absolute right to do so. A defendant cannot vacillate between admitting and denying charges against him. *Oregon v. Brumfield*, 1973, 14 Or.App. 273, 511 P.2d 1256. To permit such conduct makes a sham of the law.

I would have affirmed.

GUTHRIE, Justice, dissenting, in which RAPER, Chief Justice, joins.

I join in Chief Justice Raper's dissent and additionally deny the propriety of considering the issue discussed under point two and suggest that in pursuing such discussion and deciding upon this point that the majority ignores one of the most firmly established rules of the court, *i. e.*, that they will not consider an issue not supported by proper citation of authority and cogent argument. *Otte v. State*, Wyo., 563 P.2d 1361 (1977); *Moore v. State*, Wyo., 542 P.2d 109 (1975); *Connor v. State*, Wyo., 537 P.2d 715 (1975); *Deeter v. State*, Wyo., 500 P.2d 68 (1972); *Alcala v. State*, Wyo., 487 P.2d 448

(1971); *Kennedy v. State*, Wyo., 470 P.2d 372 (1970); *Ballinger v. State*, Wyo., 437 P.2d 305 (1968); *Valerio v. State*, Wyo., 429 P.2d 317 (1967); *Drummer v. State*, Wyo., 366 P.2d 20 (1961). The sole authority cited by the appellant in support of this contention and in his brief in no manner considers or involves this evidentiary rule; nor is there any discernible connection between the principles discussed in that case and the instant case which would assist in the disposal of the question presented. This writer would normally content himself with this statement and eschew further discussion. However, because of the fact that I view this holding as far-reaching and one which will create confusion and without any basis in the law, I shall proceed further in this demonstrating the reason if, *arguendo* it is properly before the court that the rule asserted by the majority is completely improper.

To arrive at this disposal, the majority failed to recognize the finality of an unappealed judgment based upon a guilty plea in the lower court and would allow and has commanded that the trial court allow the defendant to contradict and impeach this final judgment in an entirely *collateral* proceeding with resultant confusion.

This raises a most interesting and important question to which there appear no answers in the opinion of the majority, but demonstrates to this writer the incipient confusion which can result from such holding. If the issue is properly submitted and placed in the area of the jury's consideration, it would seem axiomatic that the State must then be allowed to rebut and meet this issue. *State v. Lee*, Mo.App., 536 S.W.2d 198, 199 (1976). This will not only be time-consuming but by virtue of such procedure, this court will have assigned to the jury, in addition to its heavy duty of the determination of the guilt or innocence of this defendant, the burden of determining if the action of the trial judge in accepting the guilty plea was proper, for if the defendant is correct in his asserted contention, there is no factual basis for the acceptance of such plea.

To demonstrate the basis for this writer's view, illustrative citations only will be set out with no effort at exhaustive citations.

A conviction until set aside must be considered a verity. *State v. Johnson*, 99 Ariz. 52, 406 P.2d 403, 404, 16 A.L.R.3d 723 (1965). Particular reference is made to the voluminous note appended to that opinion. The application of this rule alone forbids the widespread exploration contemplated by this defendant and particularly would forbid any attempt to explore if there were a factual basis for this guilty plea which is the apparent desire of the appellant and which would apparently be permissible under this opinion. The guilt or innocence of either of these witnesses which were proffered by the defendant is clearly immaterial in this case and *collateral* to the issue of whether this defendant is guilty of the crime charged. The receipt of the evidence of the conviction of a prior felony is based upon and received solely as an attack upon the credibility of the witness (Rule 609(a), W.R.E.) and in no manner can it be introduced or presented in this case or any other case for any other purpose which is certainly a *collateral* matter. Mr. Justice Holmes in 1897 and while he was still a member of the Supreme Judicial Court of Massachusetts in the case of *Lamoureux v. New York, N. H. & H. R. Co.*, 169 Mass. 338, 47 N.E. 1009, 1010 (1897), made a rather clear and short discussion of the reason why these convictions must be left unexplained with the observation that "obviously, the guilt of the witness cannot be retried." The Massachusetts court had considered this problem, both before and after *Lamoureux, supra*, and in the cases of *Commonwealth v. Galligan*, 155 Mass. 54, 28 N.E. 1129 (1891), and in *Commonwealth v. Gettigan*, 252 Mass. 450, 148 N.E. 113, 120–121 (1925), observed that it was proper to exclude such evidence directly in explaining the criminal record because that record "was conclusive evidence of the conviction and could not be controlled or explained * * *."

The case of *United States v. Plante*, 1st Cir., 472 F.2d 829 (1973), *certiorari denied*

411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411, discusses this rule at some length and sets out a preferable and majority rule. Although citing some authority that is a discretionary matter with the court, we find particular recognition of the rule that neither party should be allowed to develop such details or to allow a witness to deny his guilt, because to permit the party so to do would lead to the development of a *collateral* issue with one party or the other frequently being at disadvantage. See further, 2 Wharton's Criminal Evidence, § 498, p. 480 (13th Ed.) for a statement of this rule and authorities supporting same.

This writer is unable to discern any applicability of the cases of *Kwallek · v. State*, Wyo., 596 P.2d 1372 (1979), and *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), insofar as they would serve as a basis for the disposal proposed by the majority in part two of this opinion. This writer joined in *Kwallek* and agreed wholly therewith. It seems not improper to assert that the holding of *Kwallek* is narrow and holds that it is improper for the prosecution as part of its case in chief to inject evidence of a guilty plea of a jointly charged defendant. It is authority for no more or no less and in no manner can be construed as touching the question of the proper cross-examination or proper rehabilitative questions of a witness who has admitted the conviction of a felony. *Alford*, which is a *habeas corpus* proceeding holding that a plea of guilty to second-degree murder cannot be considered involuntary if defendant had entered the plea to avoid the possibility of conviction of a higher degree of the crime with the possible death penalty, has no apparent applicability to the matter discussed.

This writer sees no tension or conflict with Rule 609, W.R.E., and believes that in those few cases which then might arise, and none of which presently occur to this writer, the trial judge could and would properly protect the defendant by invoking Rule 403, W.R.E., and that it would be improper for an appellate court, as the majority seeks to do, to substitute its discretion. It may be further suggested that if defense counsel

had deemed that the evidence of this guilty plea might be prejudicial that he should have asked the court to restrict the scope of this evidence at the time it was given pursuant to Rule 105, W.R.E., which would have been mandatory. *Channel v. State*, Wyo., 592 P.2d 1145, 1150 (1979).